289 S.E.2d 186 (1982)
S. H.
v.
R. L. H.
No. 15449.
Supreme Court of Appeals of West Virginia.
March 18, 1982.
*188 Thomas R. Parks, Logan, for appellant.
John R. Glenn, Logan, for appellee.
NEELY, Justice:
We granted this appeal in order to illuminate further syl. pt. 7 of Garska v. McCoy, W.Va., 278 S.E.2d 357 (1981) that establishes principles for the award of child custody in domestic relations cases. That syllabus provides:
The concept of a "child of tender years" is somewhat elastic; obviously an infant in the suckling stages is of tender years, while an adolescent fourteen years of age or older is not, as he has an absolute right under W.Va.Code, 44-10-4 [1923] to nominate his own guardian. Where there is a child under fourteen years of age, but sufficiently mature that he can intelligently express a voluntary preference for one parent, the trial judge is entitled to give that preference such weight as circumstances warrant, and where such child demonstrates a preference for the parent who is not the primary caretaker, the trial judge is entitled to conclude that the presumption in favor of the primary caretaker is rebutted.
In the case before us the appellee father sought modification of a custody order on the grounds that the children wanted to live with him. There are three children involved in this case, J. H., age fourteen, R. L. H., age thirteen, and R. H., age eleven.
The trial court's findings of fact in this case were as follows:
1. [S. H.] and her present husband did live together for a period of time before they were married.
2. There is some resentment of the children of their new stepfather.
3. The oldest child, [J. H.], exercises considerable influence over the two younger children.
4. The oldest child, [J. H.], has been having sexual relations with older men, when she is able, and desires to live with her father because she believes that her mother is too restrictive in not approving of her relations with older men, and that she could have more freedom with her father. [J. H.] is fourteen (14) years of age.
5. The two younger children indicate the same preference as [J. H.], but primarily because of [J. H.'s] preference and, in any event, want to stay with their older sister, whichever parent she stays with.
6. [S. H.] has done an excellent job in caring for the children, and motivating them in school.
7. The father, [R. L. H.] has not been the primary custodian of the children for the past number of years, and the primary custodian of the infant children for the past several years has been [S. H.], the mother.
8. The father, [R. L. H.], is not an unfit person to have custody of the infant children, but has not had the experience or understanding of children of this age that [S. H.] has had.
9. The unquestionable best interests of the infant children and particularly the eldest child, [J. H.], would be best served by their remaining in the custody of their mother, [S. H.].
In deference to our syl. pt. 7 in Garska, supra, the court awarded the custody of the children to the appellee father but indicated on the record that he hoped this Court would grant an appeal and reevaluate the holding in syl. pt. 7 of Garska. After a *189 detailed review of the transcript of the proceedings before the trial court, we conclude that the trial court's order is entirely correct and we affirm the decision below awarding custody to the father.

I
There are a number of considerations that emerge from the factual record in this case that justify the continued rule that a child over the age of fourteen years has a right to nominate his or her own guardian and that younger children are entitled to express a preference about their guardian that the court must take into consideration. In the case before us the elder daughter, J. H. is a straight "A" student, is a member of her school honor society, and is active in extracurricular activities such as band and cheerleading. Furthermore, and more to the point, she has undertaken substantial child care duties with regard to her younger siblings and those children have expressed a primary preference to remain with their older sister regardless of which parent she chooses as her guardian. In addition, all things being equal, the younger children would prefer to live with their father.
It appears from the record that the appellant mother had an affair with a man who is now her husband before she married him and that the elder daughter, among other things, was responsible for waking the family up in the morning on occasions when the appellant's fiancé was spending the night. While the Court found as a fact that the elder daughter had become prematurely sexually active, it is also apparent from the record that she was not presented with a female model of chastity to imitate. While we do not either condemn or even judge the conduct of the mother, we find that any inference that the father would condone sexual activity more than the mother is unfounded.
The record indicates that the appellee father had custody of the children only one weekend a month and there was no evidence that the father encouraged the elder daughter to consort with older males or that he countenanced such a course of conduct to a greater extent than the mother. There is evidence that the children thought that their mother was too strict and that they contemplated relief from such strictness by living with their father; yet, there is no evidence that their father would not have exerted adequate discipline in an intelligent and competent manner. In fact, the court found specifically that the father was a fit parent. The evidence reveals that the appellee father had remarried, that his wife loved the three children and got alone well with them, and that there was substantial harmony in the father's house when the children visited there.

II
Since the trial court concluded that the appellant mother was, on balance, a materially better parent than the appellee father, and that the best interests of the children would be served by their continuing to live with the mother, this case squarely presents the question of what this Court meant in syl. pt. 7 of Garska, supra, when we said "... an adolescent fourteen years of age or older ... has an absolute right under W.Va.Code, 44-10-4 [1923] to nominate his own guardian." Initially, it must be pointed out that W.Va.Code, 44-10-4 [1923] does not directly apply to the award of guardianship among natural parents, but rather to circumstances where a guardian must be appointed for a child in lieu of natural parents. In the context before us, the statute is merely evidence of the legislature's conclusion concerning the age at which an adolescent should be given some substantial say in his own affairs. Some arbitrary age in this regard must be set, and since in a related context the legislature has drawn a line, we concluded in Garska, supra, that for purposes of consistency we should observe the same line.
The use of the word "nominate" in Code, 44-10-4 [1923] means that unless the court finds the nominee unfit to serve as guardian, the nominee should be confirmed by the court. See J. B. v. A. B., W.Va., 242 S.E.2d 248 (1978). This meaning should likewise be accorded our word "nominate" *190 from Garska, supra, in the context of an award of child custody of an adolescent over the age of fourteen to a natural parent. Certainly the court is not required to confirm a child's nomination of an "unfit" parent as his guardian, and when a child nominates an unfit parent as his guardian it is the obligation of the court to award the custody to the other parent. Where, for example, the record demonstrates that a parent is unreasonably lax in the maintenance of discipline, indifferent to the parental obligation to give direction and provide control for an adolescent, or follows a lifestyle that inevitably sets a licentious or immoral example, the court may reasonably conclude that such parent is an unfit guardian for an adolescent and decline to confirm the nomination by the child of that parent.

III
The facts of the case before us provide an opportunity to speak to an issue that we have not previously addressed, namely the relationship between minor children and the new spouse or regular companion of the parent originally awarded custody in a divorce decree. Literature is replete with examples of the wicked stepfather or stepmother  we have all been raised on Snow White  and our experience in these matters leads us to conclude that the relationship between children and a new stepfather or stepmother may create an abusive physical or emotional environment. In the case before us all three children are thriving in school and appear to be among the more successful children in their community. Their primary reason for preferring their father over their mother is the relationship that they have with their current stepfather. Apparently, the conflict in their mother's house emanates from their reluctance to accept their stepfather in the role of authority that they reserve for their natural father. This Court finds that their feelings in this regard are entirely justified.
In our leading cases on child custody in recent years, J. B. v. A. B., W.Va., 242 S.E.2d 248 (1978) and Garska v. McCoy, supra, we established a strong presumption in favor of the award of custody of children of tender years to the primary caretaker parent. We illuminated our reasons for this presumption in Garska, supra, where we said:
"Syl. pt. 2 of J. B. v. A. B., supra, attempted to remove from most run-of-the-mine divorce cases the entire issue of child custody. Certainly if we believed from our experience that full-blown hearings on child custody between two fit parents would afford more intelligent child placement than an arbitrary rule, we would not have adopted an arbitrary rule. However, it is emphatically the case that hearings do not enhance justice, particularly since custody fights are highly destructive to the emotional health of children. Furthermore, our mechanical rule was really quite narrowly drawn to apply only to those cases where voluminous evidence would inevitably be unenlightening. We limited the mechanical rule to the custody of children who are too young to formulate an opinion concerning their own custody and, further, we limited it to cases where initial determination had been made that the mother was, indeed, a fit parent."
In both J. B. v. A. B., supra, and Garska, supra, we discussed at length the inadequacy of the judicial process to make fine distinctions about relative degrees of parental competence between two fit parents. More importantly, however, we pointed out that the most persuasive evidence illuminating which parent will do the better job as guardian comes from the children themselves. Consequently, we provided an escape valve in domestic relations cases that permits the trial court to award custody to a parent who has not been the primary caretaker in those circumstances where the child articulates intelligent reasons for wishing to be with the other parent.
In the cases of child abuse that come before this Court we have noticed a remarkably high incidence of situations where the abusing adult is not a natural parent but rather either a stepparent or just a person of the opposite sex sharing living quarters with the natural parent. With *191 regard to children of tender years it is difficult to inquire into the facts and circumstances that surround the relationship between a child and his new stepparent or another adult sharing the residence. Nonetheless, when children get old enough that they can talk intelligently and formulate reasonable opinions, their feelings concerning a stepparent or an adult sharing living quarters should be taken very seriously by a trial court judge. In this regard we expressly hold today that the remarriage of a child's guardian or a permanent relationship in which a child's guardian and another adult share living quarters constitutes a significant change in circumstances and upon proper motion, warrants inquiry by the trial court into the relationship between the child and the new adult with particular attention to the child's preference for where he or she wishes to live if the child is capable of articulating an intelligent opinion on the subject. However, remarriage or a relationship with another adult, per se, raises no presumption against continued custody in the parent who was originally awarded custody.
On the record before us we find that the trial court correctly applied Garska v. McCoy, supra, to the facts of the case before him and accordingly the judgment of the Circuit Court of Logan County is affirmed.
Affirmed.