320 S.E.2d 112

**Timothy J. ALLEN**

v.

**Robin Jeanette Green ALLEN.**

**No. 16025.**

Supreme Court of Appeals of
West Virginia.

June 26, 1984.

Dissenting Opinion July 20, 1984.

Richard L. Vital, Barboursville, for appellant.

Phillip C. Duff, Huntington, for appellee.

McGRAW, Justice:

This is an appeal from a final order of the Circuit Court of Cabell County, entered February 3, 1983, which granted the parties a divorce on grounds of irreconcilable differences. The appellant, Robin Jeanette Green Allen, contends that the final decree is clearly wrong insofar as it grants the appellee, Timothy J. Allen, permanent custody of the parties' infant child. We conclude that the trial court abused its discretion in making the custody award, and we reverse that part of the circuit court's order.

The parties to this action were married in December 1978, and had one child, a son, who was born in 1980. In November 1981, the appellee filed for divorce in the Circuit Court of Cabell County, alleging cruel and inhuman treatment by the appellant. The appellant denied the allegations and counterclaimed on grounds of cruelty and irreconcilable differences. Both parties sought permanent custody of their infant son.

The appellee subsequently admitted the existence of irreconcilable differences between parties and abandoned his claim of cruelty. At a hearing conducted on December 23, 1981, the parties submitted to the divorce commissioner a separation agreement which granted the appellant permanent custody of the child and provided for child support and visitation by the appellee. On January 6, 1982, the commissioner submitted his report to the circuit court, recommending that the parties be granted a divorce on grounds of irreconcilable differences and that the separation agreement be adopted. Although the circuit court apparently took no action on the Commissioner's recommendations, the parties observed the provisions of the separation agreement for some time.

In June 1982, however, the appellee violated the terms of the agreement by failing to return the child to the custody of the appellant at the end of a visitation period. The appellee subsequently filed a motion with the circuit court seeking disapproval of the custody and support provisions of the separation agreement. After a hearing on July 29, 1982, the court granted the appellee's motion and ordered a hearing on the issue of permanent custody. The court permitted the appellant to retain custody of the child until August 29, 1982, at which time it ordered the child placed in the temporary custody of the appellee pending the final hearing.

The custody hearing was conducted on October 4, 1982. At the conclusion of the testimony the court concluded that the appellant was an unfit mother and awarded custody of the child to the appellee. This ruling was incorporated into the final decree of February 3, 1983, which granted the parties a divorce on grounds of irreconcilable differences. After the appellant's petition for modification of the custody decree was denied on August 25, 1983, she instituted this appeal.

On appeal the appellant contends that the trial court abused its discretion in making its initial award of permanent custody. She asserts that the court did not afford her the benefit of the primary caretaker presumption enunciated in *Garska v. McCoy*, 167 W.Va. 59, 278 S.E.2d 357 (1981). She also contends that the circuit court was clearly wrong in concluding that she was unfit to have custody.

"In a contest involving the custody of infant children, their welfare is the guiding principle by which the discretion of the trial court will be controlled, and on appeal, its determination of custody will not be set aside unless there was a clear abuse of discretion." Syl. pt. 1, *Murredu v. Murredu*, 160 W.Va. 610, 236 S.E.2d 452 (1977). In *Garska v. McCoy, supra,* we held, at Syllabus Point 2: "With reference to the custody of very young children, the law presumes that it is in the best interests of such children to be placed in the custody of their primary caretaker, if he or she is fit." Where one party in a divorce proceeding involving custody of a child of tender years can clearly demonstrate that he or she had taken the primary responsibility for child care and nurturing duties of a parent during the marriage, the presumption attaches, and the court must award custody of the child to the primary caretaker unless it is shown that he or she is unfit.

2

■ We note that the record in this case contains no determination by the trial court with respect to the primary caretaker issue.[1] There is no real dispute among the parties with respect to this issue, however. "The primary caretaker is that natural or adoptive parent who, until the initiation of the divorce proceedings, has been primarily responsible for the caring and nurturing of the child." Syl. pt. 3, *Garska v. McCoy, supra.* The appellant testified without contradiction at the hearing below that she had performed the traditional role of homemaker throughout the marriage and had taken the primary responsibility for caring for the child from the time of his birth, and her assertion is not challenged in this appeal. Accordingly, the only conclusion that can be drawn from the record is that the appellant was the primary caretaker parent prior to the institution of the divorce proceedings.

■ This determination is not dispositive of the case before us, however. The primary caretaker presumption is rebuttable and may be overcome if the primary caretaker parent is shown by a clear preponderance of the evidence to be an unfit person to have custody of a child of tender years. *See J.B. v. A.B.,* 161 W.Va. 332, 242 S.E.2d 248 (1978); *Rohrbaugh v. Rohrbaugh,* 136 W.Va. 708, 68 S.E.2d 361 (1951). Thus, the ultimate issue in this case is whether the trial court abused its discretion in concluding that the appellant was an unfit person to have custody.

The trial court's determination was apparently based on the evidence relating to the appellant's misconduct prior to and shortly after the institution of divorce proceedings in November 1981. The evidence showed that the appellant had engaged in extensive use of alcohol, marijuana and other illicit drugs during this period which had ultimately led to a short period of hospitalization in October 1981. There was

some evidence of irrational behavior on her part, and the appellee testified that the appellant frequently went out to bars with friends in the evenings leaving the appellee alone with the child until the early morning hours. The evidence also showed that the appellant had a criminal record which consisted of two minor offenses. On January 23, 1982, however, she and another individual were arrested, and subsequently indicted, on charges of armed robbery.

Although the appellant and other witnesses vigorously denied the allegations that she behaved irrationally on occasion and frequently left the child with his father to go out in the evenings, she freely admitted her prior alcohol and drug abuse and criminal record. She asserted, however, that her husband was equally guilty of substance abuse prior to the institution of the divorce proceedings, an allegation which he denied.[2] She also testified, without contradiction, that her husband worked irregular shifts averaging 60 hours per week and that he rarely assisted her in caring for and rearing the child. She testified that the minor offenses detailed in her criminal record had occurred sometime prior to the filing of the divorce complaint and offered substantial, uncontradicted testimony, including that of the robbery victims, to show that she had been an unwilling accomplice to the armed robbery. The appellee admitted that he had been aware of the appellant's drug and alcohol use and of her prior criminal record when he consented to the custody provisions of the separation agreement and that she informed him of her arrest on the armed robbery charges within days.

The record also contains substantial evidence of the appellant's conduct after the date of her arrest, however. The appellant expressed regret and repentance for her prior misconduct and testified that her arrest on the armed robbery charges had

1. Under *Garska,* the determination of which, if either, parent was the primary caretaker prior to the institution of divorce proceedings is the initial responsibility of a trial court in deciding the issue of custody of a child of tender years, since the presumption is inapplicable where nei-

ther parent is shown to have taken the primary caretaker role during the marriage. *Id.* at 363.

2. The appellee admitted that he occasionally used marijuana during the marriage, but asserted that he ceased all use of illicit drugs in October 1981.

been "an awakening" for her. Her uncontradicted testimony showed that she had ceased all use of alcohol and drugs immediately after her arrest and had continued to practice abstinence during the nine months prior to the hearing. She ceased socializing with former acquaintances of questionable character, and cooperated fully with the authorities in the prosecution of her co-indictee in the armed robbery.[3] In February 1982, the appellant enrolled in beauty school and continued to take classes until August, at which time she quit school to take a regular full-time job. In March 1982, she and the child moved from a decrepit trailer in which they had been living and into the home of the appellant's parents, who, along with other relatives, looked after the child while the appellant was at school or at work. Numerous witnesses testified that the appellant was a loving and attentive mother who devoted much of her free time to caring for and playing with her son, rarely going out in the evenings with friends or on dates.

The appellee admitted that he had little first-hand knowledge of the appellant's child care or conduct after the date of her arrest and testified that the child showed no signs of neglect or mistreatment during this period other than a need for dental work. He also admitted that he worked long, irregular hours and testified that if he were awarded custody, he would place the child in the care of his parents, who lived in a separate abode.

Although the trial judge commended both of the parties on their efforts to correct their prior inappropriate conduct before the final hearing, he evidently did not take the evidence of the appellant's reformation into consideration in making the custody award.[4] The Court awarded custody of the child to the appellee on the basis of the following findings:

1. That the [appellant] was at the time this divorce suit was filed, an unfit mother, was during the pendency of this divorce an unfit mother, and was at the time of the final hearing[5] an unfit mother, and continued to be an unfit mother until at least January the 23rd.

2. That at this point in time that the [appellee] is a fit and proper person to have the custody of the child. I realize that it is necessary for me to make a final finding that it would be in the best interests of this child for this child to be in the custody of the [appellee]. I will not make that finding. That's not to be construed as any finding that it is not in the child's best interest that the child be with the [appellee].

We are of the opinion that the trial court abused its discretion in entering an award of custody based on these findings and conclusions for several reasons. First, it is clear that the trial court's refusal to find that the custody award was in the child's best interest clearly contravenes W.Va. Code § 48–2–15 (1980 Replacement Vol.) which expressly provides that "the court shall make an award of custody solely for the best interest of the children based upon the merits of each case." As we have already noted, the child's welfare is the paramount consideration in any custody dispute. *Murredu v. Murredu, supra.* The circuit court here did not simply omit from the record a formal statement of

3. The record shows that the appellant was ultimately allowed to plead guilty to a charge of unarmed robbery and placed on probation.

4. The Court: It would appear to me that both of these people have grown up. That's probably what makes it so difficult for me to make this decision.

\* \* \* \* \* \*

This is the first time ... that I have had an occasion to have a young couple in here who have screwed their lives up because of many of the pet peeves that I have about teenagers nowadays. And being here to see them, both of them, not just one of them, but both of them, survive it. You know, it's a nice feeling, and I commend both of you because I happen to have faith that most of them do survive it, overcome it and grow up.... I feel very comfortable with the fact that I have today witnessed two of them come out of that "do your own thing," whatever the heck it is, and make it.... I wish that there was some way that I could do otherwise, but I can't do anything other than what I have done.

5. Throughout the proceedings the court referred to the hearing before the divorce commissioner in December 1982 as the "final hearing."

its determination on this issue, but, after recognizing its obligation to make such a finding, expressly refused to do so. As can be seen from the trial judge's comments at the conclusion of the custody hearing,[6] the court's unwillingness to make the requisite finding reflects not only doubts as to whether the custody award was in fact in the child's best interest, but also an intention to abdicate his official responsibilities to this Court. Consequently, we must conclude that the trial court abused its discretion in making an award of custody without determining that such award was in the child's best interest.

■ Secondly, we think the trial court abused its discretion in failing to consider the evidence of the appellant's conduct and activities after her arrest on January 23, 1982. The discretion of the trial court in making an award of child custody must be guided by the conditions and circumstances existing at the time of the decree. *See Brown v. Brown,* 142 W. Va. 695, 97 S.E.2d 811 (1957); *Gates v. Gates,* 87 W. Va. 603, 105 S.E. 815 (1921); *Cariens v. Cariens,* 50 W. Va. 113, 40 S.E. 335 (1901). The court here, however, made a determination of the appellant's unfitness apparently on the basis of conditions and circumstances existing some nine months prior to the final hearing and over one year before the decree was entered. The court did, however, find that the appellee was a fit and proper person to have custody as of the time of the final hearing and the decree. At the very least, the appellant was entitled to have the question of her fitness decided within the same time frame.

■ Moreover, even if we assume that the trial court properly concluded that the appellant was an unfit parent as of January 23, 1982, the appellant introduced substantial evidence to show that her arrest had had a sobering and stabilizing effect on her and that she had rehabilitated herself at the time of the final hearing. The law recognizes the ability of an errant parent to reform, and will forgive past acts of misconduct or immorality where at the time of the final hearing such parent has demonstrated that he or she is capable of making a proper home and providing adequate child care. *See Utter v. Utter,* 261 Iowa 683, 155 N.W.2d 419 (1968); *McKenzie v. McKenzie,* 306 S.W.2d 588 (Mo.App.1957); *Goldson v. Goldson,* 192 Or. 611, 236 P.2d 314 (1951); *Commonwealth ex rel. Grillo v. Shuster,* 226 Pa.Super. 229, 312 A.2d 58 (1973). While we neither condone the appellant's serious misconduct prior to January 23, 1982, nor hold that she conclusively demonstrated her parental fitness at the time of the final hearing, we note that the evidence shows that until June 1982 the appellant had been under the impression that a final custody decree had already been entered, lending credence to the implication that her actions reflected sincere efforts to correct her past mistakes rather than to make a record for a custody dispute. At the very least she was entitled to have this evidence considered by the trial court in making the award of custody.

Finally, it appears from the record below that the trial court's primary motivation in making the award of custody was to set the appellant up as an example to the women of Cabell County. At the close of the

6. The Court: [I]f I were [the appellee] ... and I were cognizant of the maturity that I've seen in this room here today, I would probably do one of two things when I leave here today. I would either begin to see this young lady again as soon as possible in hopes that maybe something could come of that, not only because of the fact that perhaps I might have still some feelings, but in the best interests of the child, or I would probably—maybe reluctantly, but I would probably offer her the child.

\* \* \* \* \* \*

And you know, if these people get back together, or if their maturity continues over the coming years, that I'm not really that much concerned about the child. The child can make it through this if he begins to see constantly the examples that he needs to see.

\* \* \* \* \* \*

I'm not going to change my mind. You can probably tell from the way I've talked that anything the Supreme Court would do in this matter would be find with me, but I'm not going to change my mind.

custody hearing, the circuit judge, after praising the appellant's recent efforts at self-improvement, stated on the record:

I couldn't live with myself if I would take the chance on all of the many girls or friends or acquaintances of the plaintiff's who would think for one second that you can live that way and do these things and still wind up with your baby because you can't, not in Cabell County. You just can't do it. If it will save one of them from getting married and having a baby too soon when they're not really capable of thinking about or dedicating their whole life to someone else, then it will be worth it as far as I'm concerned.

We have already held that the trial court may not award custody of a child to one parent as a means of punishing the other parent for past misconduct. "In punishing the offending spouse one may also punish the innocent child and our law will not tolerate that." *J.B. v. A.B., supra,* 161 W.Va. at 345, 242 S.E.2d at 256. In view of the circuit court's obvious disregard of this principle, we must conclude that the trial court abused its discretion in awarding permanent custody of the parties' infant child to the appellee.

▮▮▮▮ As a final matter, we note that the record and the custody decree in this case are utterly devoid of findings of fact and conclusions of law with regard to the critical issues involved in any child custody case. As we noted earlier, the trial court made no determination on the record with respect to the primary caretaker issue and expressly refused to make the requisite finding that the custody award issue was in the child's best interest. In addition, the record reveals no statement of the factual basis for the court's conclusion that the appellant was unfit to have custody. We have repeatedly held that the failure of a trial court to state on the record its findings of fact and conclusions of law violates Rule 52(a) of the West Virginia Rules of Civil Procedure.

Rule 52(a) mandatorily requires the trial court, in all actions tried upon the facts without a jury, to find the facts specially and state separately its conclusions of law thereon before the entry of judgment. The failure to do so constitutes neglect of duty on the part of the trial court, and if it appears on appeal that the rule has not been complied with, the case may be remanded for compliance.

Syl. pt. 1, *Peoples Bank of Point Pleasant v. Pied Piper Retreat, Inc.,* 158 W.Va. 170, 209 S.E.2d 573 (1974), *quoting* syl. pt. 1, *Commonwealth Tire Company v. Tri-State Tire Company,* 156 W.Va. 531, 193 S.E.2d 544 (1972). On remand this deficiency should be corrected.

Accordingly, for the reasons stated above, we conclude that the Circuit Court of Cabell County abused its discretion in awarding custody of the parties' infant child to the appellee, and we reverse the child custody provisions of the divorce decree entered by that court on February 3, 1983. The case is remanded to the circuit court with instructions that it conduct, immediately and forthwith, further proceedings for the purpose of resolving the dispute over the permanent custody of the child and enter, as soon as possible thereafter, a proper custody decree, supported by the requisite findings of fact and conclusions of law, which conforms to the principles enunciated in this opinion.

Reversed. Remanded with instructions.

NEELY, Justice, dissenting:

I respectfully dissent because I do not find that the trial court abused his discretion. Although I strongly favor our primary-caretaker-parent presumption, I do not read that presumption as providing that mothers will invariably get custody. In the case before us the record obviously discloses that the appellee father, as between the two natural parents, is superior and I would affirm the circuit court.