329 S.E.2d 57

**Vickie Lynn ROWSEY**

v.

**Danny Joe ROWSEY.**

**No. 16311.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 22, 1985.

Decided April 12, 1985.

Michael A. Woelfel, Huntington, for appellant.

Lafe C. Chafin, Barrett, Chafin, Lowry & Hampton, Huntington, for appellee.

PER CURIAM:

Vickie Lynn Rowsey appeals from the final order of the Circuit Court of Wayne County, entered March 29, 1983, which modified a final divorce decree by removing the appellant's two infant children from her custody and placing them in the custody of their father.

The appellant and Danny Joe Rowsey were divorced after ten years of marriage, by decree of the Circuit Court of Wayne County, entered July 14, 1982.[1] The two children born of the marriage, age seven and six, were placed in the custody of appellant. Visitation rights were granted to the appellee.

The divorce decree contained, *inter alia*, the following two conditions: "6. That the defendant shall not remove the children of the parties from Wayne County and Cabell County, West Virginia without first obtaining the Court's permission. 7. That the plaintiff shall have no further contact with Brenda Mayhew or Brenda Mayhew's relatives."[2]

The ban on appellant's association with Brenda Mayhew was predicated on the finding of the divorce commissioner that Brenda was a lesbian and that the appellant and her children had resided with Brenda for a period of time since the appellant and her husband separated.

Neither the divorce commissioner nor the circuit court revealed any reason for the travel limitation. Appellee asserts in his brief that the prohibition on taking the children outside Wayne and Cabell Counties was intended to prevent further contact between the appellant and Brenda.

The appellant testified at the divorce hearing that her husband "knows that I heard that [Brenda] was [a lesbian]." She

1. Although dated July 14, 1982, it is clear from the record that the divorce decree was in force on May 21, 1982.

2. It is evident that the reference to the "defendant" in paragraph 6 inadvertently failed to apply this condition to the plaintiff as well. The mistake was apparently overlooked by the parties.

denied telling anyone other than her husband that Brenda was a lesbian, and she denied having "any sort of relationship" with Brenda.

The appellee testified that the appellant told him Brenda was a lesbian. He further testified that Brenda had a short "butch hair cut, and that she wore work clothes and boots."

Three witnesses, called by the appellee, contradicted the appellant by testifying that the appellant told them that Brenda was a lesbian. One of these witnesses, the appellant's stepmother, also testified that Brenda gave the appellant a diamond necklace. A fourth witness, the appellant's stepsister, testified that she saw Brenda and the appellant once enter a bathroom and remain there for about three minutes.

The appellee introduced telephone bills indicating numerous, lengthy calls from his home both to Brenda's home in Tennessee and to the home of Brenda's grandmother in Kanawha County, West Virginia.

Following the presentation of all evidence at the divorce hearing, the divorce commissioner stated that he would recommend that the appellant be granted custody of the children. Counsel for the appellee requested a restraining order to prevent removal of the children from West Virginia pending appeal.

At the close of the hearing, the commissioner warned the appellant that further contact with Brenda or Brenda's relatives would result in termination of custody and that the children should not be removed from Wayne County.

The commissioner reported to the circuit court that he found "no evidence of misconduct between the parties nor ... any misconduct in the presence of the children." There was no objection to the final divorce decree, nor was it appealed.

From the time the divorce decree took effect, the children remained with their father, first to finish school and thereafter to have a six-week summer visitation. During the father's visitation period, the appellant was permitted weekend visitation. The appellant was specifically allowed, by terms of the decree, to take the children to the State of Ohio on the last weekend of May and the first weekend of June. In July of 1982, the appellant spent a weekend with her children at Brenda's home in the State of Tennessee. At the end of the weekend, she returned to West Virginia and dropped the children off at their father's house.

The appellee subsequently petitioned for a change of custody alleging that there had been a change of circumstances warranting a shift of custody from the appellant to the appellee.

A few days later the circuit court issued a rule, upon the affidavit of appellant, requiring the appellee to appear to show cause why he should not be punished for failure to comply with the divorce decree. The appellant stated in her affidavit that the appellee was withholding the children from her and was therefore in contempt of the custody order.

Following the hearing on the modification petition, the commissioner found that the appellant had, together with her children, associated with Brenda and had left the State of West Virginia. Upon presentation of the findings to the circuit court, the former order was amended by granting custody of the children to the appellee, granting visitation rights to the appellant, and prohibiting removal of the children from the State of West Virginia without a court order.

The circuit court's findings of fact, adopted verbatim from the commissioner's report, are as follows:

1. Your Commissioner would refer the Court to his report submitted herein previously this year after hearing evidence at the divorce hearing and particularly the stern warnings given to the plaintiff about her association with one Brenda Mayhew and having the children in the presence of herself and Brenda Mayhew and, further, the requiring of the plaintiff to return to and remain in West Virginia at the marital home.

2. Your Commissioner finds that the plaintiff was not concerned with the warnings of the court and has, in fact,

continued to associate with Brenda Mayhew, has had the children in association with Brenda Mayhew, and has not continued to reside in West Virginia in the marital home.

We have, quite frequently and clearly, stated the following standard which must be met prior to a change of child custody: "To justify a change of child custody, in addition to a change in circumstances of the parties, it must be shown that such action would materially promote the welfare of the child." Syl. pt. 2, *S.L.M. v. J.M.*, 174 W.Va. 46, 321 S.E.2d 697 (1984); syl. pt. 3, *Horton v. Horton*, 164 W.Va. 358, 264 S.E.2d 160 (1980); syl. pt. 2, *Porter v. Porter*, 171 W.Va. 157, 298 S.E.2d 130 (1982); syl. pt. 2, *Cloud v. Cloud*, 161 W.Va. 45, 239 S.E.2d 669 (1977); syl. pt. 1, *Kinney v. Kinney*, 172 W.Va. 284, 304 S.E.2d 870 (1983); syl., *Legg v. Legg*, 169 W.Va. 753, 289 S.E.2d 504 (1982); syl. pt. 1, *J.A.S. v. D.A.S.*, 170 W.Va. 189, 292 S.E.2d 48 (1982).

An even more fundamental principle that generally guides child custody determinations is found at syl. pt. 1 of *Allen v. Allen*, 173 W.Va. 740, 320 S.E.2d 112 (1984): " 'In a contest involving the custody of infant children their welfare is the polar star by which the discretion of the court will be controlled, and on appeal, its determination of custody will not be set aside unless there was a clear abuse of discretion.' Syl. pt. 1, *Murredu v. Murredu*, 160 W.Va. 610, 236 S.E.2d 452 (1977)."

Some of the findings are not supported by the evidence of record. First, there was no requirement imposed on the appellant to reside in the marital home. Second, there is no support for the finding that the appellant was required to reside in West Virginia during periods when she did not have physical custody of the children.

One finding that is supported by the record is that the appellant continued to associate with Brenda Mayhew and had the children in association with Brenda. There was no finding that the appellant removed the children from the State of West Virginia, although this fact is obviously apparent from the record.

With regard to the most significant issues, there was no finding that any proven change of circumstance adversely affected the children, nor was there a finding that a change of custody would materially promote the welfare of the children. "A change of custody should not be based only upon speculation that such change will be beneficial to the children." Syl. pt. 6, *Holstein v. Holstein, supra*.

The fact that a custodial parent and her children are in the presence of a woman who is reputed to be a lesbian is not a ground for changing custody to the noncustodial parent. The appellee relies on *N.K.M. v. L.E.M.*, Mo.App., 606 S.W.2d 179 (1980), where a divorced mother with custody of her ten year-old daughter violated a condition in the custody decree that forbade the continuation of a relationship with a certain woman. The violation was found to be a changed circumstance. It was also found that the mother was admonished by the decree that such a violation would result in a change of custody. The court said, however, that the admonition "must be regarded as precatory and as surplusage," 606 S.W.2d at 183, and it insisted on adherence to a standard similar to ours: "Having found a violation of the condition, *the court must still find from all the circumstances that the welfare of the child is served by the custody transfer*." (emphasis added). *Id*.

The record is devoid of evidence showing an adverse impact on the children caused by contact with Brenda, by the appellant's continued association with Brenda, or by the appellant's short trip to Tennessee.

A change of custody based on a speculative notion of potential harm is an impermissible exercise of discretion.

The abuse of discretion by the trial court mandates reversal of the modification order. *Allen v. Allen, supra*.

The appellant concedes that her conduct was violative of the conditions in the initial custody decree. No rule in contempt was issued against the appellant, none was sought, and no finding was made that the former order was, in fact, violated. The

substantive actions of the appellant, in associating with Brenda and removing the children from the State for a few days, standing alone, are not grounds for changing custody. The fact that these actions were taken in defiance of a court order may be a changed circumstance, but we emphatically return to the fundamental principle that a change of custody shall not be ordered unless it be shown that such change would materially promote the welfare of the children. Absent such a showing, the violation of a court order is not a proper ground for changing custody. *See N.K.M. v. L.E.M., supra* 606 S.W.2d at 183; *Matter of Marriage of Poulson,* 70 Or. App. 505, 690 P.2d 526 (1984); *Guss v. Guss,* 1 Conn.App. 356, 472 A.2d 790 (1984); *Schuster v. Schuster,* 90 Wash. 626, 585 P.2d 130, 133 (1978). *See also Dempsey v. Dempsey,* 172 W.Va. 419, 306 S.E.2d 230 (1983); *Ledsome v. Ledsome,* 171 W.Va. 602, 301 S.E.2d 475 (1983).

■ An award of custody to one parent should not be used as a means of punishing the other parent. *Allen v. Allen, supra* 320 S.E.2d at 118; *J.B. v. A.B.,* 161 W.Va. 332, 345, 242 S.E.2d 248, 256 (1978).

■ We need not address appellant's contention that the petition to modify was insufficient, containing only a conclusory assertion that circumstances had materially changed and lacking an allegation that the change of custody would materially promote the welfare of the children. The appellant did not move to dismiss or otherwise object to the holding of a hearing on the petition. Nor did she include this claim in her bill of exceptions to the divorce commissioner's report. Under these circumstances, we believe that she waived this defense.

■ Paragraph six of the original divorce decree, prohibiting removal of the children from Wayne or Cabell County without permission of the court, is challenged as an infringement of the appellant's constitutional right to travel. This Court has recognized a right to travel, under the Federal Constitution. *Spradling v. Hutchinson,* 162 W.Va. 768, 253 S.E.2d 371 (1979). The paramountcy of child welfare

may, however, supersede the right to travel. *Ziegler v. Ziegler,* 107 Idaho App. 527, 691 P.2d 773 (1984); *Carlson v. Carlson,* 8 Kan.App. 564, 661 P.2d 833 (1983); *Crumpton v. Crumpton,* 443 So.2d 315 (Fla.App.1983).

■ In *Pugh v. Pugh,* 133 W.Va. 501, 56 S.E.2d 901 (1949), we implicitly approved of custody orders preventing removal of children from the state in appropriate circumstances. The decision of whether to permit or prohibit removal must be based on the welfare of the child. "When the award of custody of an infant to a resident of another° state, or the removal of the infant to another jurisdiction, will not serve, or is detrimental to the welfare of the child, such award or such removal will not be permitted. (citations omitted)." *Pugh v. Pugh, supra,* 133 W.Va. at 509, 56 S.E.2d at 905.

The best interests of the children served as the foundation for our decision in *Sparks v. Sparks,* 165 W.Va. 484, 269 S.E.2d 847 (1980), where we overturned a lower court's injunction preventing a custodial mother from travelling with her children outside the United States. Since there was no evidence that a trip to Scotland would be detrimental, the order banning travel was held to be impermissible. Neither *Sparks* nor *Pugh* invoked the constitutional right to travel.

The challenged condition is no longer in force, having been superseded by the amended order that enlarged the geographic area within which the parents were free to travel with their children. Upon restoration of custody to the appellant, the travel restriction in the original decree may not be reinstated unless there is a showing that such a restriction serves the best interests of the children.

For the foregoing reasons, the final order of the Circuit Court of Wayne County is reversed, and custody of the two minor children is restored to the appellant.

Reversed.