352 S.E.2d 131

**Janice WEECE (Formerly Janice Cottle)**

**v.**

**Donald COTTLE.**

**No. 16964.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 10, 1986.

Decided Dec. 19, 1986.

James Allen Colburn, Baer & Colburn, Huntington, for appellant.

David J. Lockwood, Huntington, for appellee.

PER CURIAM:

This is an appeal by Janice Cottle Weece from an order of the Circuit Court of Cabell County denying her petition for modification of the court's previous custody award. The appellant sought through her petition to be awarded legal custody of her daughter, Melinda, who was then five-years of age. The circuit court, without considering the best interest of the child, denied the petition on the basis that no change in circumstances occurred which would warrant a change in custody from the natural father to the natural mother, and that the mother's misconduct would render her ineligible to receive custody of her child.

In this appeal the appellant mother contends that the trial court failed to consider that the parties' situations had changed significantly since the prior order, that the evidence demonstrated that changing cus-

tody of the daughter to the mother would materially benefit the child and that a change in custody was in the best interest of the child. We agree that the trial court failed to consider the best interests of the child and therefore reverse and remand the case to the circuit court.

The parties were divorced on July 8, 1980, and custody of Melinda, who was born on May 20, 1979, was placed in her mother, the appellant herein. Thereafter, the parties had many disputes over alimony, child support and visitation which resulted in frequent appearances before the trial court. Finally, on September 21, 1981, the trial judge, believing that the mother and her family had interfered with the father's right to visit with the child stated, "I don't know of any other way to address the problem other than to award the custody of the child to the father with visitation rights to the mother and see how that works." [1] An immediate change in custody was ordered.

Later that same day, instead of transferring custody of the child to the father, the mother left the State with the child, eventually arriving in Tulare County, California, where her aunt and uncle resided. Without contacting the father or in any way revealing the whereabouts of the child, the mother established a new life in Tulare County. She found a job, remarried, and enrolled Melinda in a pre-school program.

On July 10, 1984, the father subpoenaed telephone records from the appellant's parents in West Virginia and thereby discovered the location of appellant and their daughter. On July 24, 1984, the mother was arrested at her home in California under a felony warrant by agents from the Federal Bureau of Investigation (FBI) and the child was placed in foster care. In early August, 1984, the child was returned to West Virginia and placed in the custody of the father, appellee herein. The felony charges were dismissed and appellant returned to West Virginia and immediately filed the modification petition which is the subject of this appeal.[2]

At the series of hearings held on said petition in October and November, 1984, the appellant called eight witnesses, including her husband, in addition to testifying in her own behalf. She presented one witness from California, a welfare department supervisor who was a friend of the family, who described Melinda as a "very happy, well adjusted" child who was close to both her mother and stepfather.

Appellant's minister from Chesapeake, Ohio, described Mrs. Weece's "happy and jovial" relationship with Melinda prior to her flight from West Virginia and also his favorable opinion of appellant's relationship with her husband, Doyle Weece, since their return from California.

Appellant's high school principal, who had also been a neighbor, was acquainted with Mrs. Weece and her daughter both during her marriage to appellee and after the divorce. He testified that she had a strong maternal attachment to the child and was "kind and considerate" in her contact with Melinda. Two employees of the Department of Human Services in Wayne County, who supervised the appellant's visits with Melinda, described their relationship as "very good" and that Melinda "seems to enjoy her mother."

Psychiatrist, Dr. Robert W. Hibbard, based on his interviews with both Mrs. Weece and her parents, and his review of appellant's Minnesota Multiphasic Personality Inventory (MMPI) test results, stated that Janice Weece was a fit parent. Psychologist, Barbara N. Tinsman, M.A., interviewed Mrs. Weece and her husband,

---

1. We note that *W. Va. Code*, 48A–5–7 was enacted in 1986 as part of the child support enforcement legislation and sets forth a series of penalties to secure the enforcement of visitation rights.

2. The appellant had obtained a temporary restraining order granting her custody of Melinda from the Superior Court of Tulare County, California, on July 18, 1984. By agreement of the parties, and respective judges in California and West Virginia, a stipulation was entered on July 27, 1984, which provided that Melinda would be returned to West Virginia by a social worker and at such time as West Virginia assumed custody jurisdiction all proceedings in California would be dismissed.

Doyle; and Melinda with Mr. Cottle and his wife, Kimberly; and, conducted psychological testing of Mr. and Mrs. Weece. Ms. Tinsman was critical of each parent for using the child as a weapon against the other and strongly recommended that after custody was resolved, both parents agree to arbitration by a family therapist so that visitation could be conducted in a manner least damaging to the child. Acknowledging "its a tough decision," Ms. Tinsman concluded "[t]here is no psychological or physical evidence to suggest that Melinda's care should be removed from her mother."

Both the appellant and her husband testified about their life together with Melinda and expressed their strong desire to be granted custody of Melinda. Mrs. Weece stated that she left West Virginia after she had been "surprised, shocked and disoriented" by the court's decision to give Mr. Cottle custody of Melinda.

The appellee and his wife were the only witnesses in opposition to appellant's petition to modify. They related their daily activities with Melinda and described her as a happy child who had made a positive adjustment in their home. Much of the the appellee's testimony on direct examination concerned his fees and expenses in traveling to California to recover custody of Melinda, and the cost of Melinda's travel back to West Virginia.

From the record it is apparent that the court was intent upon reinstituting its prior order of September, 1981, which transferred custody of Melinda to Mr. Cottle.

> [T]his matter, insofar as the custody or change of custody is concerned, has been heretofore heard upon its merits in its entirety and a decision thereon has been made and an order was entered on September 25th of '81 . . . . [T]he order perhaps leaves a little bit to be desired insofar as findings and what have you are concerned, but I didn't prepare it, so I'm not going to worry about it. Nevertheless, it's perfectly clear by virtue of that order that this matter has been heard upon its merits.

While a petition seeking an appeal of the 1981 custody order was denied by this Court in March, 1982, we are called upon to comment on the deficiencies of that custody order because of the trial court's stated reliance upon it in 1984 when issuing the custody decree which is before us on appeal. This earlier order states only in the most conclusory language that appellant and family "continued to commit certain acts" which interfered with appellee's visitation. The trial court failed to make the necessary factual findings that would support its conclusion that changing custody to the father was in the child's best interest. We have repeatedly held that:

> Rule 52(a) mandatorily requires the trial court, in all actions tried upon the facts without a jury, to find the facts specially and state separately its conclusions of law thereon before the entry of judgment. The failure to do so constitutes neglect of duty on the part of the trial court, and if it appears on appeal that the rule has not been complied with, the case may be remanded for compliance.

Syl. pt. 1, *Peoples Bank of Point Pleasant v. Pied Piper Retreat, Inc.*, 158 W.Va. 170, 209 S.E.2d 573 (1974), *quoting*, syl. pt. 1, *Commonwealth Tire Company v. Tri-State Tire Company*, 156 W.Va. 351, 193 S.E.2d 544 (1972).

The trial court was uncertain how to consider Mrs. Weece's petition, and therefore construed the pleading both as a motion to reconsider the 1981 order and a motion to modify custody. In the first instance, the Court denied reconsideration because the evidence was not "substantial enough" and the case had previously been heard in 1981. In the alternative, the trial court denied a modification "by virtue of the kidnapping" and "resulting unclean hands," and the fact that the father had too brief a period of actual custody for a change of circumstances to occur.

The custody order made no findings regarding the status of the child. Nor were the reasons that custody in the father would be in the child's best interest set forth. Likewise, the trial court, in rendering its decision from the bench in 1984, made no reference to the child's interest in the custody determination.

"To justify a change of child custody, in addition to a change in circumstances of

the parties, it must be shown that such change would materially promote the welfare of the child." Syl. pt. 2, *Cloud v. Cloud,* 161 W.Va. 45, 239 S.E.2d 669 (1977).

In 1981, the court clearly believed that appellant's family's interference with visitation constituted a change of circumstances, but the court did not consider whether a custody change would materially promote the welfare of the child. In *Rowsey v. Rowsey,* 174 W.Va. 692, 329 S.E.2d 57 (1985), we held that even though a party's violation of a court order may constitute a changed circumstance, "we emphatically return to the fundamental principle that a change of custody shall not be ordered unless it be shown that such change would materially promote the welfare of the [child]." In 1984 the court found no change in circumstances and reinstated the 1981 order but without addressing whether custody of the child by the father was in the child's best interest. *Holstein v. Holstein,* 152 W.Va. 119, 160 S.E.2d 177 (1968); *Murredu v. Murredu,* 160 W.Va. 610, 236 S.E.2d 452 (1977).

The child is now seven and one-half years old. Because the child's best interest has not been considered, this case will be remanded to the circuit court for further proceedings to be held as expeditiously as possible consistent with this opinion.

Reversed and remanded.