406 S.E.2d 454

**Jeffrey J. BURDETTE, Plaintiff Below, Appellee,**

v.

**Julie H. Burdette ADKINS, Defendant Below, Appellant.**

**No. 19980.**

Supreme Court of Appeals of West Virginia.

Submitted March 12, 1991.

Decided June 13, 1991.

Patricia A. Dameron, David B. McMahon, Huntington, for Adkins.

Cheryl A. Eifert, Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, for Burdette.

**PER CURIAM:**

This is an appeal by Julie H. Adkins from an order of the Circuit Court of Cabell County transferring custody of her seven-year-old daughter, Jacqueline Nicole Burdette, to Jeffrey J. Burdette, the child's father. That order modified a previous divorce decree awarding the appellant legal custody of the child. On appeal, the appellant claims that the circuit court erred in altering the custody established by the divorce decree. After reviewing the record, this Court agrees and reverses the decision of the circuit court.

The appellant, Julie H. Adkins, and the appellee, Jeffrey J. Burdette, are the natural parents of Jacqueline, who was born on December 8, 1982. Shortly after the birth of the child, the parties, who lived in Georgia, separated and later were divorced. The Georgia court which granted the divorce awarded the appellant custody of Jacqueline. It also granted Jeffrey J. Burdette, the child's father, visitation rights.

After the divorce, the appellant married Sidney Adkins in July, 1985. Twins were born of that marriage in September, 1987.

After the birth of the twins, Jacqueline, the appellant, the twins, and the appellant's new husband, Sidney Adkins, moved from Georgia to Florida. In Florida, Mr. Adkins became abusive toward the appellant. As a result, the appellant and Mr. Adkins separated.

During the separation, altercations occurred between the appellant and Mr. Adkins while he was attempting to visit the twins, who remained in the appellant's home. As a result of the altercations, the appellant filed two petitions for relief from domestic violence. The situation deteriorated further on August 9, 1989, when Mr. Adkins absconded with the physical custody of the twins while the appellant was at a job interview and moved with them and his girlfriend and her child first to Georgia and then to Huntington, West Virginia. In October, 1989, Mr. Adkins filed a divorce action in West Virginia.

The appellant was extremely upset over the removal of the twins and, according to appellee's brief, the appellant sought a warrant for the arrest of Mr. Adkins for kidnapping and filed an action in West Virginia to obtain custody of the twins. Mr. Adkins subsequently re-established contact with the appellant and offered to let her, Jacqueline, and the twins reside in the upper story of his residence. The appellant testified that she contemplated attending college to study nursing, and she apparently decided to take Mr. Adkins up on his offer in order to regain custody of the twins and have some means of support while attending college.

On June 15, 1990, Jeffrey J. Burdette, the natural father of Jacqueline, petitioned the Circuit Court of Cabell County to alter the custody arrangement established by the Georgia court and to grant him legal custody of Jacqueline. The circuit court referred the proceeding to a family law master, who conducted extensive hearings in the matter on July 16, 1990, and July 17, 1990.

In the course of the hearings, evidence was introduced showing that, except when she was visiting her father, Jacqueline had been in the sole physical custody of her mother since she was one year old. The evidence also showed that the child was well-adjusted and gifted. Recognizing that her own domestic disruptions could have an adverse impact on Jacqueline, the appellant sought counselling for the child through the school system. Her counselor indicated

that she was far beyond her chronological age in both maturity and intelligence.

When asked whether she would rather live with her mother or father, the child expressed a strong desire to live with her mother, but indicated that she wished to visit her father from time to time. She also indicated that she had developed a strong attachment to her twin half-siblings and that she worried about them when temporarily separated from them.

Other evidence focused on the household arrangements of the appellant and the appellee, Jacqueline's natural father. In addition to showing the appellant's unusual arrangements in Huntington, the evidence showed that the appellee was living with a girlfriend in Georgia.

At the conclusion of the proceedings, the master recommended that the Georgia decree be modified and that legal custody of Jacqueline be placed in her father.

The master issued findings and recommendations on July 20, 1990. Specifically, he found that Jacqueline had lived at at least nine different addresses since the Georgia divorce and that, at the time of the proceeding, the appellant and child were living in a single-family residence with Sidney Adkins, with Mr. Adkins' girlfriend, who was pregnant, as well as with the girlfriend's child by a former marriage and the twin children of the appellant and Mr. Adkins. The master found that no part of the house was unsanitary, but that it was unkempt due to construction and due to the fact that there were four children present. The master stated, "I am very concerned that this child now believes that this is an acceptable manner in which to live if economics so require."[1] The master noted that Sidney Adkins was twenty-seven years of age, able-bodied, strong and healthy, but that he had not engaged in gainful employment for seven months. He also found that Mr. Adkins showed little consideration to others and that he did what he pleased. On the other hand, he found that the appel-

lant's former husband, Jeffrey J. Burdette, lived in a good neighborhood and suggested that he was involved in a more stable situation.

The master concluded that the appellant was living in an unfit environment and that:

> ... I am firmly convinced under the bizarre living conditions that exist with the child and her half brother, sister, and mother, the same does not serve her best interest and welfare. It sets a horrendous example for this child to fashion her life after as she becomes older ... It would appear that the father, Jeffrey Burdette, should either marry his girlfriend or move his girlfriend out of his house;[2] that the child's best interest would be served in the father's home, and such would materially promote her welfare.

The master recommended that Jacqueline spend all school vacations except Christmas with the appellant. He also recommended that the Christmas vacation be split between the parties.

The appellant took exception to the master's findings, and the matter was referred to the Circuit Court of Cabell County for review.

The judge of the circuit court reviewed the questions presented and the record and by order entered August 20, 1990, accepted the family law master's recommendations. In accepting the recommendations, the court found that the frequent changes of address to which Jacqueline had been exposed had created an unstable growing environment, that the appellant had exposed the child to physical harm by Sidney Adkins, and that the appellant, by living with Mr. Adkins, was continuing to expose the child to the domination and control of Mr. Adkins. The court noted that the appellant had twice obtained domestic violence petitions against Mr. Adkins and that by failing to remove the child from the influence and control of Mr. Adkins, the appellant

---

1. It should be noted that the same family law master presided over the divorce proceedings wherein such arrangement was given the imprimatur of the court.

2. It should be noted that, subsequent to the hearings before the family law master, the appellee did marry his girlfriend and the appellant did move out of the residence of Mr. Adkins.

had placed her own needs before the safety and best interests of the child. He concluded that the unstable living environment and the possibility of physical harm constituted sufficient material change of circumstances to justify a change in custody.

In the present proceeding, the appellant claims that the circuit court's ruling was erroneous. Specifically, the appellant argues that living arrangements that are unconventional are not contrary to the generally accepted morals of this society and do not *per se* warrant a change in custody. She also argues that in modifying a child custody order, a trial court must find not only a change of circumstances, but that a change in custody would materially promote the welfare of the child.

■ In syllabus point 2 of *Cloud v. Cloud*, 161 W.Va. 45, 239 S.E.2d 669 (1977), this Court stated the fundamental principle which governs the change of legal custody of an infant child. That syllabus point states:

> To justify a change of child custody, in addition to a change in circumstances of the parties, it must be shown that such change would materially promote the welfare of the child.

■ The Court has also recognized that unconventional behavior, even where it entails such things as acts of sexual misconduct, does not *per se* warrant a change of custody of an infant child. *See J.B. v. A.B.*, 161 W.Va. 332, 242 S.E.2d 248 (1978); *S.H. v. R.L.H.*, 169 W.Va. 550, 289 S.E.2d 186 (1982). Furthermore, it was unrefuted in the instant case that the appellant and Mr. Adkins were not engaged in *any* type of sexual conduct with each other, but merely lived on two different floors of the same house for economic reasons.

■ In the case presently before the Court, there is extensive evidence that both the appellant and her former husband, Jeffrey J. Burdette, experienced changes in their circumstances following their divorce and preceding the court's action in the present case. The evidence shows that the appellant moved from Georgia to Florida, married, had twin children, and then relocated to Huntington, West Virginia. On the other hand, her former husband began cohabiting with a woman and was engaged to be married.

As suggested in *Cloud v. Cloud, supra,* a change of circumstances alone will not justify a change in child custody. There must also be a showing that the change in custody would materially benefit the welfare of the child.

The evidence adduced during the present case shows that, except for periods of visitation with her father, Jeffrey J. Burdette, the infant child, Jacqueline, has been in the sole physical custody of her mother, the appellant, since the parties were separated when she was one year old. It also shows that the child is very emotionally bonded to her mother and that it is her strong desire to remain with her mother. She likewise is attached to her half-siblings. The evidence further shows that Jacqueline has adjusted well in school and that she is very happy in it.

Although there is evidence that the appellant's house was unkempt and that her living arrangements were unusual, there is no evidence that it was unsanitary or an unfit place to live.

After reviewing the facts of this case, this Court is of the opinion that the evidence fails to support the conclusion that a change in custody of Jacqueline from her mother to her natural father would promote the welfare of the child. In spite of the suggestion that the child was potentially exposed to physical harm in Florida during altercations between her mother and her second husband, Sidney Adkins, there is no showing that the child was actually harmed, nor that the risk of any such harm continues. Further, the evidence tends to show that the child has thrived while in the custody of her mother, that she is mature, intelligent, relatively happy, and well adjusted. Further, she has shown a clear preference to remain with her mother.

Under the overall circumstances of the case, this Court believes that the trial court erred in modifying the legal custody arrangement established when the appellant and Jeffrey J. Burdette were divorced and

that the legal custody of the child, Jacqueline, should be returned to her mother, the appellant, Julie H. Adkins.

The judgment of the Circuit Court of Cabell County is, therefore, reversed, and the legal custody of the child, Jacqueline Nicole Burdette, is reinvested in the appellant, Julie H. Adkins.

Reversed.