453 S.E.2d 387

**Linda Ann LESAVICH, Formerly Linda Ann Anderson, Plaintiff Below, Appellant,**

v.

**David Wayne ANDERSON, Defendant Below, Appellee.**

**No. 22017.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 20, 1994.

Decided Dec. 19, 1994.

Mary Ellen Griffith, Bell & Griffith, Princeton, for appellant.

David Lockwood, Dan Egnor, Lockwood, Egnor & Vital, Huntington, for appellee.

## PER CURIAM:

Linda Ann Lesavich, the appellant in this custody-modification proceeding, claims, among other things, that the Circuit Court of Cabell County erred in ordering the transfer of custody of her four-year-old daughter to the child's father, David Anderson, the appellee. After reviewing the issues raised and the facts presented, this Court agrees. The decision of the Circuit Court of Cabell County is, therefore, reversed.

The appellant and the appellee, David Anderson, were divorced by order of the Circuit Court of Cabell County in July, 1990. In granting the divorce, the circuit court awarded the appellant custody of the parties' infant daughter and also awarded the appellee, who was the child's father, visitation rights, which were scheduled to increase as the child became older.

It appears that after the divorce, the parties disagreed over the appellee's visitation rights and engaged in considerable legal wrangling over those rights. The wrangling culminated in the filing of a petition for change of custody by the appellee on March 13, 1992.

The petition for change of custody charged that the visitation provisions of the divorce decree had not worked and that the appellant had failed to afford the appellee reasonable visitation rights. The appellee alleged that he was interested in maintaining a relationship with his daughter and that an award of custody to him would be in the best interest of the child.

Prior to the filing of the petition for modification, the appellee had had an overnight visitation with his daughter on the night of December 3, 1991. After that visitation, the appellant, according to her later testimony, noticed that the child had returned in a very dirty state and that she had red marks on her back and a red and irritated vaginal area.

After the appellee filed his petition for modification of custody, some six months after the December 3, 1991, visitation, the appellant filed a report of alleged child abuse in Putnam County, West Virginia.

The custody-modification petition was referred to a family law master, and a number of hearings were scheduled in the case.

At the hearings, extensive evidence was introduced on the problems experienced by the appellee in obtaining visitation with the parties' daughter. Evidence was also introduced on the question of whether the appellee had abused the parties' child and on the question of whether the appellant, or some other individual, had attempted to "frame" the appellee on the abuse charges.

At the conclusion of the hearings, the family law master, on March 25, 1993, submitted a recommended decision in which he noted that visitation had been effected from time to time over the appellant's objections but that it had not really been meaningful. He also expressed the opinion that the abuse charges against the appellee had been concocted and that, as false charges, they would ultimately have an impact on the child's opinion of her father.

The family law master concluded that the appellant was never going to permit visitation by the appellee with the child and stated:

This is probably the grosses [sic] case in my 23 years of judging as Family Law Master or Divorce Commissioner that I have ever heard!

He recommended that the custody of the parties' infant child be changed immediately and concluded that such a change of custody was justified under this Court's ruling in

*Arbogast v. Arbogast*, 174 W.Va. 498, 327 S.E.2d 675 (1984).

The family law master's recommended decision was submitted to the circuit court, and the circuit court, after taking under consideration exceptions interposed by the appellant adopted the recommended decision and transferred the care, custody, and control of the infant child to the appellee.

In the present proceeding, the appellant argues that the trial court erred in adopting the family law master's recommended decision and in modifying the previous custody decree.

In syllabus point 2 of *Cloud v. Cloud*, 161 W.Va. 45, 239 S.E.2d 669 (1977), this Court enunciated the fundamental principle to be employed in determining whether the custody of an infant child should be changed after such custody has previously been established. The Court stated:

> To justify a change of child custody, in addition to a change in circumstances of the parties, it must be shown that such change would materially promote the welfare of the child. ·

*See also, Cunningham v. Cunningham*, 188 W.Va. 235, 423 S.E.2d 638 (1992); *Burdette v. Adkins*, 185 W.Va. 228, 406 S.E.2d 454 (1991).

In line with this, the Court has also indicated that:

> In a contest involving the custody of infant children, their welfare is the guiding principle by which the discretion of the trial court will be controlled and on appeal, its determination of custody will not be set aside unless there was a clear abuse of discretion.

Syllabus point 4, *Murredu v. Murredu*, 160 W.Va. 610, 236 S.E.2d 452 (1977); Syllabus point 1, *Allen v. Allen*, 173 W.Va. 740, 320 S.E.2d 112 (1984).

It appears that the decisions of the family law master and the trial court in the present case were grounded substantially upon this Court's decision in *Arbogast v. Arbogast, supra*.

*Arbogast* dealt with the question of whether this Court would grant full faith and credit to a Kansas decree modifying child custody. It appears that the Kansas decree ordering modification was largely predicated upon the custodial parent's willful and contumacious refusal to allow the noncustodial parent visitation with the parties' son.

In *Arbogast*, this Court recognized that the Kansas court had jurisdiction of the parties and jurisdiction over the subject matter at the time of entering the modification order. The Court further found that, under the circumstances, the Kansas decree was entered under such circumstances as required this Court to give it full faith and credit.

In *Rowsey v. Rowsey*, 174 W.Va. 692, 329 S.E.2d 57 (1985), a case decided after *Arbogast*, this Court more directly addressed the question of whether denial of visitation would support a modification of custody. The Court, in *Rowsey*, while recognizing that a party's failure to comply with visitation requirements may constitute a changed circumstance, also stated:

> [W]e emphatically return the fundamental principle that a change of custody shall not be ordered unless it be shown that such change would materially promote the welfare of the children.

174 W.Va. at 696, 329 S.E.2d at 61.

The Court held, in essence, that interference resulting in denial of visitation, in the absence of a showing that a change of custody would materially promote the welfare of the child, would not support the modification of a prior custody decree. The Court reached a similar conclusion in *Weece v. Cottle*, 177 W.Va. 380, 352 S.E.2d 131 (1986).

In the present case, as in *Rowsey v. Rowsey, supra*, the Court does not believe that the evidence showing that the appellant has failed to comply fully with the prior visitation order alone will support a modification of the prior custody award. It still must be shown that a modification will materially promote the welfare of the child.

The family law master did suggest that there were false charges of child abuse against the appellee, and he concluded that the raising of such false charges had a poten-

tially negative impact on the welfare of the child.

So far as this Court can determine, the child abuse charges filed against the appellee have not been finally resolved. In essence there is no conclusory evidence that the charges against the appellee are false.

It is fundamental that the decision in a custody proceeding must be based on fact, and not on speculation. *Holstein v. Holstein,* 152 W.Va. 119, 160 S.E.2d 177 (1968); *Boger v. Boger,* 86 W.Va. 590, 104 S.E. 49 (1920).

In view of this rule, the Court does not believe that the matter in this case relating to the falsity of the child abuse charges can establish that a change of custody will promote the welfare of the child or should have any bearing on the resolution of the issues involved.

Overall, this Court believes that the denial of visitation to support a modification of custody must be accompanied by a showing that a change of custody will materially promote the welfare of the child, and since such a showing was not made in the present case, the Court believes that the trial court's modification ruling must be reversed.

It is not the intent of this Court, in this case, to suggest that the denial of appropriate visitation is an insubstantial matter, or question of no legal importance. The Court believes that appropriate visitation by a child with a noncustodial parent is a circumstance which, under most conditions, will materially promote the welfare of the child. The Court, in concluding that the trial court in the present proceeding applied inappropriate findings in altering the original custody situation, in no way finds that the appellee should be denied appropriate visitation with the infant child. However, while abuse proceedings are pending, in this Court's view, it would certainly be appropriate, given the Court's ruling in *Mary D. v. Watt,* 190 W.Va. 341, 438 S.E.2d 521 (1992), for a supervising trial court to impose some limitations on visitation to guard against further possible abuse.

For the reasons heretofore stated, the judgment of the Circuit Court of Cabell County is reversed, and this case is remanded to the circuit court with directions that the circuit court reinvest the appellant with the custody of the parties' infant child and that the circuit court take such steps as are reasonably necessary to insure that the appellee has appropriate, and adequate, visitation with the parties' infant child.

Justice NEELY dissents and would affirm the judgment of the Circuit Court of Cabell County.

Reversed and remanded with directions.

BROTHERTON, C.J., did not participate.

MILLER, Retired J., sitting by temporary assignment.