712 S.E.2d 786

**TEVYA W., Petitioner Below, Appellant**

v.

**ELIAS TRAD V., Respondent Below, Appellee**

No. 35760.

Supreme Court of Appeals of West Virginia.

Submitted April 26, 2011.

Decided June 21, 2011.

---

John G. Ours, Petersburg, WV, for Appellant.

Patricia L. Kotchek, Petersburg, WV, for Appellee.

PER CURIAM:

This is an appeal by Tevya W. (hereinafter "the Appellant" or "the mother") from an order of the Circuit Court of Hardy County in which the circuit court affirmed the decision of the Family Court of Hardy County. The family court had refused to alter the custody arrangements for the Appellant's son, Elias,[1] presently age ten. Upon thorough review of the record, briefs, arguments

1. Due to the sensitive nature of the facts involved in this case, we will adhere to our usual practice in such matters and refer to the parties by their first names and last initials only. *See In re Clifford K.*, 217 W.Va. 625, 630 n. 1, 619 S.E.2d 138, 143 n. 1 (2005), and cases cited therein.

of counsel, and applicable precedent, this Court finds that the circuit court committed no reversible error and therefore affirms its determination.

### I. Factual and Procedural History

The Appellant and Elias Trad V. (hereinafter "the Appellee" or "the father") are the parents of one son, Elias, born on January 17, 2001. When the Appellant and Appellee divorced in 2003, an approved shared parenting plan provided that Elias was to reside primarily with his mother, with an allocation of parenting time to his father. In July 2005, the Family Court of Hardy County temporarily transferred Elias' primary residency to the father due to the mother's drug usage.[2] In December 2005, the family court transferred full custody of Elias to the father, with visitation to the mother every other weekend. The father has been the primary custodial parent since that time.

On July 28, 2006, the mother filed a pro se petition to regain primary custody of Elias. She asserted that she had been drug-free since August 2005 and that such recovery should constitute a change of circumstances warranting an alteration of the custody arrangements.[3] The family court found insufficient evidence to support a change of the shared custody arrangements. The record does not reflect that any appeal of this order was filed by the mother. It has thus become final and unappealable.

The father filed a motion for contempt on February 28, 2007, based upon the mother's alleged violation of the shared parenting plan. Upon review of the allegations, the family court found that the mother had failed to comply with residence relocation provisions, had failed to return Elias to his father in a timely fashion, and was in contempt for failure to pay child support.[4]

The mother filed a second petition to alter child custody arrangements on March 31, 2008, with the assistance of counsel, again contending that she was drug-free and that her circumstances had changed because she had remarried and wanted primary custody of Elias. A guardian ad litem, Amanda See, was appointed by the family court on May 19, 2008, for the stated purpose of determining whether either parent was exerting undue influence over the child or alienating one parent against the other. The guardian ad litem reported that the mother had "apparently advanced by leaps and bounds over her previous drug history," but that Elias was in a stable living environment with the father. Upon thorough review, the family court again declined to grant the mother's petition for alteration of the custody order, finding insufficient change of circumstances and no evidence that a change in custody would benefit the child. That order did alter weekend custody, allowing the mother to have extended custody of Elias all weekends except one per month.[5] Again, the record does not reflect that an appeal was filed by the mother. It has thus become final and unappealable.[6]

On January 12, 2010, the mother filed a third petition to alter the custody arrangements, thus originating the action that is currently on appeal to this Court. In that petition, the mother contended that the father had divorced his second wife, Ms. Terri Pennington, and had been using illegal drugs. The family court heard testimony

2. The mother cites a July 2005 motor vehicle accident in which she inadvertently injured a young woman in a parking lot as the impetus for her drug usage. The mother was ultimately hospitalized at Chestnut Ridge Hospital due to her use of marijuana and methamphetamines.

3. The mother also contended that Elias had been physically abused by his father and great-grandfather. Finding no evidence of abuse and no basis for altering custody, the family court dismissed the petition in August 2006.

4. The mother was provided an opportunity to purge herself of contempt by paying the child support arrearage. She failed to pay the arrearage and was committed to the Potomac Highlands Regional Jail. A cash bond was ultimately posted and applied to unpaid child support.

5. During the summers when Elias was not in school, the record reflects that the parties agreed upon a shared custody arrangement in which the parties had custody of Elias every other week.

6. In November 2008, the mother was again found in contempt of court for failure to pay attorney's fees that had previously been awarded to the father. The family court again committed the mother to the Potomac Highlands Regional Jail, subject to her posting of a cash bond.

from the mother and the father's ex-wife, Ms. Pennington, in support of the mother's petition for modification. The father presented the testimony of several witnesses, refuting the mother's testimony regarding his parenting abilities and relationship with Elias. Subsequent to these hearings conducted by the family court, the video recordings of which have been thoroughly reviewed by this Court, the family court entered a March 31, 2010, order finding insufficient cause for altering the custody arrangements. The family court found that although the father had three DUIs prior to the parties' marriage, there is "only one DUI that Petitioner can complain about and it was in 2006." The family court noted that the DUI did not adversely affect the child; that modification petitions had been filed by the mother and refused since that DUI had occurred; and that the mother had not "borne her burden of proving by a preponderance of the evidence that drug use by Respondent [father Appellee] exists." The family court noted the extensive record in this case and the numerous issues that had been presented to the family court. The family court found that the "child is thriving and the Court finds no reason in the evidence to modify this arrangement." The Circuit Court of Hardy County affirmed the decision of the family court, and the mother thereafter appealed to this Court.

## II. Standard of Review

■■■ In the syllabus of *Carr v. Hancock,* 216 W.Va. 474, 607 S.E.2d 803 (2004), this Court enunciated the following standard of review:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo.*

7. This Court has repeatedly held that "'[i]n a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Point 2, Syllabus, *State ex rel. Lipscomb v. Joplin,* 131 W.Va. 302[, 47 S.E.2d 221 (1948)]." Syl. Pt. 1,

In the syllabus of *Nichols v. Nichols,* 160 W.Va. 514, 236 S.E.2d 36 (1977), this Court explained that "[q]uestions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." This emphasis on the discretionary determinations of the court having the opportunity to assess witness credibility and demeanor has been repeatedly recognized. "A reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, in part, *In re Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996).

■■■ In acknowledging the appropriate standard of review to be exercised by this Court, we must also be mindful of the admonition of syllabus point one of *Allen v. Allen,* 173 W.Va. 740, 320 S.E.2d 112 (1984), as follows: "'In a contest involving the custody of infant children their welfare is the polar star by which the discretion of the court will be controlled, and on appeal, its determination of custody will not be set aside unless there was a clear abuse of discretion.' Syl. pt. 1, *Murredu v. Murredu,* 160 W.Va. 610, 236 S.E.2d 452 (1977)."

## III. Discussion

■■■ This court has uniformly and invariably adhered to one essential concept when evaluating the issue of whether the existing custody arrangements of a child should be altered. "In visitation as well as custody matters, we have traditionally held paramount the best interests of the child." Syl. Pt. 5, *Carter v. Carter,* 196 W.Va. 239, 470 S.E.2d 193 (1996).[7] Consistent with this fundamental principle, this Court has explained that two requirements must be satisfied in

*State ex rel. Cash v. Lively,* 155 W.Va. 801, 187 S.E.2d 601 (1972); *see also David M. v. Margaret M.,* 182 W.Va. 57, 60, 385 S.E.2d 912, 916 (1989) (Acknowledging that the "child's welfare is the paramount and controlling factor in all custody matters.").

order to warrant a change of child custody. Syllabus point two of *Cloud v. Cloud*, 161 W.Va. 45, 239 S.E.2d 669 (1977), cogently states as follows: "To justify a change of child custody, in addition to a change in circumstances of the parties, it must be shown that such change would materially promote the welfare of the child." *See also* Syl. Pt. 1, *Judith R. v. Hey*, 185 W.Va. 117, 405 S.E.2d 447 (1990); Syl. Pt. 2, *S.L.M. v. J.M.*, 174 W.Va. 46, 321 S.E.2d 697 (1984); Syl. Pt. 1, *Kinney v. Kinney*, 172 W.Va. 284, 304 S.E.2d 870 (1983); Syl. Pt. 2, *Porter v. Porter*, 171 W.Va. 157, 298 S.E.2d 130 (1982); Syl. Pt. 1, *J.A.S. v. D.A.S.*, 170 W.Va. 189, 292 S.E.2d 48 (1982); Syllabus, *Legg v. Legg*, 169 W.Va. 753, 289 S.E.2d 504 (1982); Syl. Pt. 3, *Horton v. Horton*, 164 W.Va. 358, 264 S.E.2d 160 (1980). As this Court stated in *Waller v. Waller*, 166 W.Va. 142, 272 S.E.2d 671 (1980), in a proceeding for a change of custody, the noncustodial parent must demonstrate that circumstances have changed and that the proposed change in custody would materially benefit the child. 166 W.Va. at 143, 272 S.E.2d at 672; *see also State ex rel. Chris Richard S. v. McCarty*, 200 W.Va. 346, 489 S.E.2d 503 (1997); *Alireza D. v. Kim Elaine W.*, 198 W.Va. 178, 479 S.E.2d 688 (1996).

■ In addition to the precedent set forth by this Court, the provisions of West Virginia Code §§ 48–9–101 to –604 (2001) (Repl.Vol. 2009) also enumerate guidelines for custody decisions.[8] Again, the paramount consideration must be the best interests of the child. It is the "public policy of this State to assure that the best interest of children is the court's primary concern in allocating custodial and decision-making responsibilities between parents who do not live together." *Id.*

at § 48–9–101(b). As recently emphasized by this Court in *Skidmore v. Rogers*, —— W.Va. ——, —— S.E.2d —— (W.Va.2011),[9] the legislature identified "several overarching goals for courts to follow in determining custody arrangements." —— W. Va. at ——, —— S.E.2d at ——. The best interests of the child are to be served by facilitating the following:

(1) Stability of the child;

(2) Parental planning and agreement about the child's custodial arrangements and upbringing;

(3) Continuity of existing parent-child attachments;

(4) Meaningful contact between a child and each parent;

(5) Caretaking relationships by adults who love the child, know how to provide for the child's needs, and who place a high priority on doing so;

(6) Security from exposure to physical or emotional harm; and

(7) Expeditious, predictable decision-making and avoidance of prolonged uncertainty respecting arrangements for the child's care and control.

The legislature cites a "secondary objective" as the achievement of fairness between the parents. *Id.* at § 48–9–102 (emphasis added).

■ This Court has also recognized that the perceived best interest of a parent is not a proper basis for a custody alteration, stating that the interests to be determinative of the issue are the "interests of the child and not of the parent." *Honaker v. Burnside*, 182 W.Va. 448, 452, 388 S.E.2d 322, 325 (1989) (quoting Note, *Visitation Beyond the*

---

**8.** West Virginia Code § 48–9–401(c) lists several factors which specifically do "not justify a significant modification of a parenting plan except where harm to the child is shown[.]" These include the following:

 (1) Circumstances resulting in an involuntary loss of income, by loss of employment or otherwise, affecting the parent's economic status;
 (2) A parent's remarriage or cohabitation; and
 (3) Choice of reasonable caretaking arrangements for the child by a legal parent, including the child's placement in day care.

**9.** In syllabus point three of *Skidmore*, this Court held as follows: "West Virginia Code § 48–9–

401(a) (2009) permits a court to modify a parenting plan order on the basis of a substantial change in circumstance that arises after the parenting plan order is entered if such change was not provided for in the parenting plan and modification is necessary to serve the best interests of the child." Furthermore, the *Skidmore* Court explained that "[w]hether such a change in circumstance could have been anticipated when the original parenting plan order was entered is of no consequence." —— W.Va. at 8, —— S.E.2d at ——.

*Traditional Limitations,* 60 Ind.L.J. 191, 219 (1984)). "Visitation is, to be sure, a benefit to the adult who is granted visitation rights with a child. But it is not the adult's benefit about which the courts are concerned. It is the benefit of the child that is vital." *Id.* "Although parents have substantial rights that must be protected, the primary goal ... in all family law matters ... must be the health and welfare of the children." Syl. Pt. 3, in part, *In re Katie S.,* 198 W.Va. 79, 479 S.E.2d 589 (1996).

■ This Court has also been adamant that a court's speculation regarding whether a change would materially promote the child's welfare is an improper ground for a determination. In syllabus point six of *Holstein v. Holstein,* 152 W.Va. 119, 160 S.E.2d 177 (1968), this Court stated this principle as follows: "A change of custody should not be based only upon speculation that such change will be beneficial to the children." *See also Rowsey v. Rowsey,* 174 W.Va. 692, 329 S.E.2d 57 (1985). The *Holstein* Court articulated the principle that a parent would not be permitted to regain custody where that parent had lost custody due to that parent's indiscretions unless the parent demonstrated that the proposed change of custody would materially promote the moral and physical welfare of the children. 152 W.Va. at 123, 160 S.E.2d at 180.

In the case sub judice, this Court must determine whether the circuit court erred in upholding the family court's ruling that the mother had not proven both changed circumstances and that a change in custody arrangements would materially promote the Elias' welfare. Elias has resided primarily with his father since 2005, approximately one-half of this young child's life.

The mother requested modification of the custody arrangements on two prior occasions, both of which were denied by the family court. With no appeal being filed to those orders, they are now final and unappealable. The mother's current request for modification reiterates her prior assertion that she is no longer abusing drugs and supplements that prior assertion by including an allegation that the father is now using drugs. The primary evidence of this alleged drug use was presented through the testimony of the father's ex-wife, Ms. Pennington. The family court found Ms. Pennington's testimony to be unconvincing, explaining that the "Court questions the value of testimony provided by Terri Pennington, Respondent's ex-wife, who may have a grudge against him." [10] The mother, remarried and pregnant [11] at the time of the hearings which are the subject of this appeal, also attempted to portray the Appellee as a father who permitted all other relatives, particularly Ms. Pennington and his parents, to provide caretaking duties for the child.

In response to the mother's allegations, the father testified and presented additional witness testimony indicating that he was an excellent father and caretaker for Elias. His occupation as a boilermaker permitted him to spend sizeable periods of time with Elias during periods of unemployment, and he returned home every evening while he was employed. The father also specifically denied abusing drugs and introduced evidence of Elias' proficient performance in school, as explained by the very credible testimony of his teacher, Megan DiBenedetto. Relocation to the mother's home as a primary residence would require changing schools and the establishment of new sets of friends and sports affiliations.[12] Elias' grandfather and step-grandmother also testified regarding the eve-

10. The father testified that Ms. Pennington had specifically warned him that if he left her, she would endeavor to have Elias removed from his custody. The father further indicated that Ms. Pennington had been unfaithful to him, had abused drugs, and had broken into his home.

11. This Court stated as follows in footnote three of *Skidmore,* "To be clear, neither the birth of a half-sibling nor the advance in a child's age will necessarily constitute a basis for a modification of a parenting plan order in all cases. Whether any change in circumstance that was not anticipated in a parenting plan can serve as the basis for a modification is a case specific question, and courts must consider the best interest of the child in each individual case." —— W.Va. at ——, —— S.E.2d at ——.

12. The testimony during the family court hearing indicated that the Appellant and Appellee live approximately one hour from one another and in separate counties.

ning routines and caretaking duties performed by the father, as well as Elias' positive temperament and adjustment to his home environment.

 Thus, the family court was presented with conflicting testimony regarding the parenting abilities and lifestyles of the two parents. The evidence established that Elias is currently receiving excellent care and is excelling in school and extracurricular activities. Upon deliberation, the family court concluded that no change of circumstance had occurred since the court's prior order and that a change of Elias' custody would not materially promote his welfare. Further, the mother is receiving significant time with Elias, including every weekend per month except one and every other week during the summer, satisfying this Court's prior admonition that " '[i]n considering visitation issues, the courts must also be mindful of facilitating the right of the non-custodial parent to a full and fair chance to continue to have a close relationship with his children.' Syllabus point 9, *White v. Williamson*, 192 W.Va. 683, 453 S.E.2d 666 (1994)." Syl. Pt. 3, *Storrie v. Simmons*, 225 W.Va. 317, 693 S.E.2d 70 (2010).

This Court's standard of review of the underlying determinations is limited, as explained above. Findings of fact are reviewed under the clearly erroneous standard, and the application of law to the facts is reviewed under an abuse of discretion standard. This Court is compelled to respect the sound discretion of the lower court, and its action is not to be disturbed on appeal unless it clearly appears that such discretion has been abused. Further, this Court is not permitted to overturn a finding simply because it would have decided the case differently, and the

ultimate guidance in cases of this nature is derived through an evaluation of the best interests of the child.

This Court has thoroughly analyzed this very difficult case and finds the mother's rehabilitation and recovery from her drug addiction to be highly commendable. To have progressed successfully from drug addiction to complete recovery is an extremely laudable accomplishment. However, the mother twice attempted to modify the child custody arrangements on the basis of her rehabilitation. She did not appeal the resulting adverse decisions of the lower tribunals, and this Court is prohibited from altering those determinations in this appeal.[13]

This case has proceeded to this Court through a rather tortured procedural course.[14] Despite the myriad of competing concerns, the paramount consideration of this Court must be Elias' needs for stability and continuity. The family court's first two refusals for modification were not appealed, further extending the time during which Elias was primarily residing with his father. Elias has now spent approximately one-half of his life in the primary care of his father, is thriving educationally and socially, and has been determined by the guardian ad litem to be living in a very stable environment.

 According to the testimony presented at the hearing, Elias spends at least half of his summer break with his mother and is also with her every weekend per month except one. Thus, this is not a situation in which the mother is being deprived of significant time with her son. The evidence supports a finding that Elias' current residential placement is facilitating both the establishment of significant social and educational

**13.** This Court explained in *Liller v. West Virginia Human Rights Comm'n*, 180 W.Va. 433, 376 S.E.2d 639 (1988) that "[t]he underlying purpose of both doctrines [res judicata and collateral estoppel] is to prevent relitigation of matters about which the parties have had a full and fair opportunity to litigate and which were in fact litigated." 180 W.Va. at 440, 376 S.E.2d at 646. In pertinent part of syllabus point two of *Conley v. Spillers*, 171 W.Va. 584, 301 S.E.2d 216 (1983), this Court explained as follows: "Collateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit."

**14.** This Court notes that the initial December 14, 2005, order transferring primary custody to the father did not enumerate any specific procedure through which the mother could rehabilitate her drug addiction and regain more extensive custody rights to the parties' son. The order simply stated that the mother "may petition the Court at a later date when she can provide greater evidence of rehabilitation."

foundations within his father's community and the continuation of a meaningful relationship with his mother. While this Court acknowledges the mother's significant achievement in drug rehabilitation, the best interests of Elias must take priority in this custody determination. This Court finds no abuse of discretion in the reasoned conclusions of the family court and circuit court in this case, and we consequently affirm those determinations.

Affirmed.

Chief Justice WORKMAN concurs and reserves the right to file a concurring opinion.

WORKMAN, Chief Justice, concurring:

This is a very difficult case. The mother argued on appeal that she relinquished primary custody of this child temporarily to the father at a time when she became subject to depression as the result of accidentally injuring a young woman in a motor vehicle accident, which in turn caused her to become involved in drug use. There were also allegations and evidence, rejected by the finder of fact, of the father's illegal drug use. The father also has a record of convictions for driving under the influence. In addition, it was argued by the mother that the father's work involved frequent absences from the home, and as a result, the real care-taker of the child in his present living situation had been the husband's now ex-wife and now his parents. A child deserves both his parents, and one of the primary functions of courts in this context is to ensure the continued opportunity for relationship between them.

The majority affirms the lower courts on two bases. First, citing the principles of res judicata and collateral estoppel, the majority states that because the Appellant failed to appeal the denial of the July 28, 2006, and March 31, 2008, petitions by the family court,[1] this Court is prohibited from altering those determinations in this appeal. I write separately to point out, however, that the majority fails to appreciate that these petitions were not based on identical claims of rehabilitation; rather, each asserts varying degrees of recovery from drug addiction.[2] Because the duration of time that a person achieves sobriety is a significant factor in recovery, I believe that continued sobriety should be considered as an additional change in circumstances. A parent who has remained sober for nearly five years has a far more powerful claim to a change of circumstances than a parent who has been drug-free for merely a month. Such long-lasting transformations reveal a level of stability and personal advancement that is more deserving of consideration by the family court. Thus, because the issues presented are not identical, collateral estoppel should not have barred the Appellant from raising this claim of a change of circumstances.

If one presumes that the Appellant's continued sobriety was found to constitute a change of circumstances, however, that alone does not justify a change of custody. Under West Virginia Code § 48–9–401 (2009), it must be shown that such a change would materially promote the welfare of the child,[3] the determining factors of which are listed in West Virginia Code § 48–9–102 (2009). The second basis for the majority's decision is

---

1. The Appellant has filed three petitions to alter the child custody arrangement since December 2005, when the family court transferred full custody of the child to the Appellee due to the Appellant's drug usage. In each, she attempted to modify the child custody arrangement on the basis of her continued sobriety. In the July 28, 2006, petition, the Appellant asserted that she has been drug-free for nearly a year. In the March 31, 2008, petition, she asserted she has been drug-free for two years. Finally, in the January 12, 2010, petition, she asserted she has been drug-free for four and a half years.

2. Syl. Pt. 1, State v. Miller, 194 W.Va. 3, 459 S.E.2d 114 (1995)("Collateral estoppel will bar a

claim if four conditions are met: *(1) The issue previously decided is identical to the one presented in the action in question;* (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair *opportunity* to litigate the issue in the prior action.")(Emphasis added).

3. *See Cloud v. Cloud,* 161 W.Va. 45, 239 S.E.2d 669 (1977); *Holstein v. Holstein,* 152 W.Va. 119, 160 S.E.2d 177 (1968); *Pugh v. Pugh,* 133 W.Va. 501, 56 S.E.2d 901 (1949).

that the lower courts did not abuse their discretion in determining that there was insufficient evidence to show that a change of child custody would materially promote the welfare of the child. In reviewing cases such as this, this Court must remember that the family court judge is in a position to see and assess the facts in a manner that we are not. Consequently, I cannot dissent from the Court's affirmation of the lower courts' determinations with respect to this issue.

Therefore, because the lower courts found that the child appears to be thriving educationally and socially under the current arrangement, I concur with the majority that there is no abuse of discretion in the reasoned conclusions of the family court and circuit court that a change of custody would not materially promote his welfare.

Therefore, for the reasons stated above, I concur.