No. 12-0173 – *In The Matter of Hunter H.*

**FILED**

**June 17, 2013**

**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

WORKMAN, Justice, concurring, in part, and dissenting, in part:

I concur with the majority's determination that, under the circumstances of this case, continued visitation between the grandmother and the child was not appropriate. However, I dissent from the majority's reasoning because it shows a complete lack of understanding of our existing body of law concerning the rights of children to continued association.

While the majority gives lip service to the viability of the significant body of law that this Court has developed on a child's right to continued association, it effectively ignores that body of law in the analysis of this case.

It is important to note that the certified question was very direct:

> *Does a child's right to continued association* with individuals with whom he has formed a close emotional bond, i.e. his maternal grandmother, continue post-adoption by non-relatives, provided that a determination is made that such continued association is in the best interests of the child?

1

(Emphasis added). Notwithstanding the question posed by the circuit court, the majority simply ignores the question.

I dissent from the majority's absolute reliance on the Grandparent Visitation Act ("the Act"), West Virginia Code §§ 48-10-101 to -1201 (2009). Such slavish reliance solely on the foregoing statutory scheme is done with full abandonment of the well-established law by this Court concerning the child's right to continued association. Succinctly stated, the majority opinion only addresses the rights of grandparents as set forth in the Act and turns a blind eye to the rights of the child–rights that are wholly left unaddressed by Legislature in the provisions of the Act and now by the majority of this Court.

While the majority attempts to factually distinguish the instant case from some of the Court's earlier decisions involving continued association, they ignore an important case wherein the rights of children to continued association first emerged. In *Honaker v. Burnside*, 182 W. Va. 448, 388 S.E.2d 322 (1989), the natural father was challenging a six-month transition period in connection with the restoration of full custody of his child back to him. The child had been in the custody of her mother with reasonable visitation by the natural father. *Id*. at 449-50, 388 S.E.2d at 323. The child's mother remarried and the child lived during this marriage with her mother, stepfather and half-brother. The natural father, however, maintained his relationship with his daughter. *Id*. There was no contention or

2

evidence that the natural father was unfit (or had abandoned his parental rights or responsibilities). *Id*. But after the child's natural mother was killed in an automobile accident, pursuant to her will, she named the child's stepfather as guardian and the natural father sought custody of his daughter. *Id*. at 450, 388 S.E.2d at 323-24.

After the court set a six-month transition period, the father filed a petition for writ of mandamus and/or prohibition with this Court seeking immediate custody. This Court determined the natural father had a right to custody of his child, but also considered whether it was in the child's best interests to have a continued relationship with her stepfather and half-brother. The Court stated that

> [u]ndoubtedly, . . . [the child's] best interests must be the primary standard by which we determine her rights to continued contact with other significant figures in her life. Clearly, "these interests are interests of the child and not of the parent. Visitation is, to be sure, a benefit to the adult who is granted visitation rights with a child. But it is not the adult's benefit about which the courts are concerned. It is the benefit of the child that is vital." "Visitation is not solely for the benefit of the adult visitor but is aimed at fulfilling what many conceive to be a vital, or at least a wholesome contribution to the child's emotional well being by permitting partial continuation of an earlier established close relationship." *Looper v. McManus*, 581 P.2d 487, 488 (Okla. Ct. App.1978).

*Honaker*, 182 W. Va. at 452, 388 S.E.2d at 325 (footnotes omitted). Additionally, the Court stated:

> The best interests of the child concept with regard to visitation emerges from the reality that "[t]he modern child is

3

considered a person, not a sub-person over whom the parent has an absolute and irrevocable possessory right. The child has rights . . . ." Another concern is "the need for stability in the child's life . . . . [T]ermination of visitation with individuals to whom the child was close would contribute to instability rather than provide stability.["]

*Id.*, 388 S.E.2d at 326 (footnotes omitted). Thus, the Court held that even though the custody of the child should be with the natural parent absent proof of abandonment, misconduct or neglect, "the child may have a right to continued visitation rights with the stepparent or half-sibling." *Id.* at 449, 388 S.E.2d at 323, Syl. Pt. 2, in part.

Thus, the Court upheld the right of continued association of a child with a step-father (not even a blood relative), even in the face of the very strong parental right of a biological father.

Thereafter, in *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991), the Court held in syllabus point four that

[i]n cases where there is a termination of parental rights, the circuit court should consider whether continued association with siblings in other placements is in the child's best interests, and if such continued association is in such child's best interests, the court should enter an appropriate order to preserve the rights of siblings to continued contact.

*Id.* at 649, 408 S.E.2d at 401, Syl. Pt. 4. In so holding, the Court acknowledged the important concept that "[t]rends both in social work and the law relating to child placement indicate an

4

increased awareness of children's rights to such continued association with siblings and other meaningful figures." *Id*. at 658, 408 S.E.2d at 410.

The Court further explained a child's right to continued association in *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995), a case which included not only the right to continued association between siblings, but also a child's right to a continued association with his mother post-termination of the mother's parental rights. We held in *Christina L.* that

> [w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. *Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest.*

*Id*. at 448, 460 S.E.2d at 694, Syl. Pt. 5 (emphasis added). Thus, once again in *Christina L.*, like in *Honaker*, we reemphasized the importance of the visitation working in favor of the child's well-being and best interests, thereby implicitly recognizing that a court has an obligation to facilitate a child's right to human relationship when it is in his best interests.

Another case that is analogous to the instant case was *In re Jonathan G.*, 198 W. Va. 716, 482 S.E.2d 893 (1996). In *Jonathan G.*, the child was ultimately returned to the legal custody of his natural parents after the child had been in the care and custody of foster

5

parents for years. Upon the return of the child to his natural parents, the circuit court determined that it had no basis upon which to order continued association between the foster parents and Jonathon G. *Id*. at 734, 482 S.E.2d at 911. This Court disagreed with the circuit court and remanded the case for proceedings to consider whether continued association between the child and his foster parents was in the child's best interests. *Id*. at 736, 482 S.E.2d at 913.

> We stated in *Jonathan G.*:

> > The guiding principle relied upon by this Court in recommending consideration of continued contact with a child is whether a strong emotional bond exists between the child and an individual such that cessation in contact might be harmful to the child, both in its transitory period of adjusting to a new custodial arrangement and in its long-term emotional development. We find no reason to except individuals, like the Stems, who have had a successful long-term relationship with a foster child and have been found, in fact, to be psychological parents to Jonathan G., from consideration for such continued association.

*Id*. at 735, 482 S.E.2d at 912. Additionally, we recognized that

> > while "[t]here is little uniformity in the case law concerning nonparental visitation over the objection of a biological or adoptive parent, . . . some courts have observed a judicial trend toward considering or allowing visitation to nonparents who have a parent-like relationship with the child *if visitation would be in the best interest of the child*."

*Id*. (quoting in *In re Custody of H.S.H.K.*, 533 N.W.2d 419, 435 n.37 (Wis.), *cert. denied sub nom. Knott v. Holtzman*, 516 U.S. 975(1995)) (emphasis added).

6

Thus, we held in syllabus point eleven of *Jonathon G.* that "[a] child has a right to continued association with individuals with whom he has formed a close emotional bond, including foster parents, provided that a determination is made that such continued contact is in the best interests of the child." *Jonathan G.*, 198 W. Va. at 720, 482 S.E.2d at 897, Syl. Pt. 11; *see also In re Clifford K.*, 217 W. Va. 625, 646, 619 S.E.2d 138, 159 (2005) ("We would be remiss if we did not also reiterate that '[a] child has rights, too, some of which are of a constitutional magnitude.' *Lemley [v. Barr]*, 176 W. Va. [378] at 386, 343 S.E.2d [101] at 109 [(1986)] (internal quotations and citations omitted). Among these, '[a] child has a right to continued association with individuals with whom he has formed a close emotional bond . . . provided that a determination is made that such continued contact is in the best interests of the child.' Syl. pt. 11, in part, *In re Jonathan*, 198 W. Va. 716, 482 S.E.2d 893. *Accord Snyder v. Scheerer*, 190 W. Va. [64] at 72, 436 S.E.2d [299] at 307 [(1993)] (recognizing 'the right of a child to continued association with those individuals to whom the child has formed an attachment'). In this regard, '[t]he length of time that the child has remained with [such individual(s)] is a significant factor to consider in determining this issue.' *In re Jonathan*, 198 W. Va. at 736 n. 41, 482 S.E.2d at 913 n. 41.").

This Court has clearly held that, even when biological parental rights are involved, a *child's right* to continued relationship with non-parents can prevail.

7

Notwithstanding the foregoing precedent set forth by this Court regarding a child's right to continued association with individuals with whom the child has significant, strong emotional bonds, the majority, with its slavish devotion only to the law of the statutes, holds in syllabus points one, two and three as follows:

> The Grandparent Visitation Act, *W. Va. Code* § 48-10-101 *et seq.* [2001], is the exclusive means through which a grandparent may seek visitation with a grandchild.

> The best interests of the child are expressly incorporated into the Grandparent Visitation Act in *W. Va. Code* §§ 48-10-101, 48-10-501, and 48-10-502 [2001].

> Pursuant to *W. Va. Code* § 48-10-902 [2001], the Grandparent Visitation Act automatically vacates a grandparent visitation order after a child is adopted by a non-relative. The Grandparent Visitation Act contains no provision allowing a grandparent to file a post-adoption visitation petition when the child is adopted by a non-relative.

While there is no question that these three new syllabus points address the rights of the grandparent, the majority's decision is devoid of any significant discussion about the rights of a child.

Finally, while the majority holds in the third new syllabus point that the visitation rights of grandparents are automatically vacated after a child is adopted by a non-relative pursuant to the provisions of West Virginia Code § 48-10-902, neither the majority,

8

nor the Legislature, has addressed the rights of the child. Despite what may happen to the rights of the grandparents in this case, the child, nevertheless, has a continued right to association with individuals with whom the child has strong emotional bonds so long as that continued association is in the child's best interests and is not detrimental to the parent-child relationship.

Let there be no mistake that upholding a child's right to continued association does not always mean always granting the visitation sought. In the instant case, while the guardian ad litem argued that the child desired continued association with his grandmother, the facts did not warrant the circuit court upholding the continued association as in the child's best interests. There was information offered by the guardian ad litem that demonstrated that the grandmother was interfering in a manner that was detrimental to the child's well-being.[1] This was demonstrated by the grandmother insisting on overnight

---

[1]Visitation in conjunction with continued association with a child is analogous to shared parenting insofar as it necessitates a high degree of cooperation between the parties involved in order to be successful. *See generally* W. Va. Code §§ 48-9-101 to -604 (2009 & Supp. 2012). Included in this statutory scheme relating to the allocation of custodial responsibility and decision making responsibility of children is certain criteria that focuses upon the level of cooperation necessary to serve the best interests of the child. Specially, West Virginia Code § 48-9-102 (a) provides:

> (a)The primary objective of this article is to serve the child's
> best interests, by facilitating:
> (1) Stability of the child;
> (2) Parental planning and agreement about the child's custodial

(continued...)

visitation despite the child being sick and on medication. There was also information that the grandmother's attorney was demanding that the adoptive parents provide a physician's order showing the diagnosis, as well as the prescription. Further, there was indication that the grandmother was allowing the child to visit the child's biological mother, whose rights had been terminated. This conduct on the grandmother's part not only circumvented the wishes of the parents, but also violated the circuit court's order terminating the biological mother's parental rights. This pattern of behavior obviously indicated a contentious relationship between parents and the grandmother which was not in the child's best interests. Thus, in the analytical framework of the law relative to a child's right to continued

---

[1](...continued)
    arrangements and upbringing;
    (3) Continuity of existing parent-child attachments;
    (4) Meaningful contact between a child and each parent;
    (5) Caretaking relationships by adults who love the child, know how to provide for the child's needs, and who place a high priority on doing so;
    (6) Security from exposure to physical or emotional harm; and
    (7) Expeditious, predictable decision-making and avoidance of prolonged uncertainty respecting arrangements for the child's care and control.

*Id.*; *see Tevya W. v. Elias Trad V.*, 227 W. Va. 618, 623, 712 S.E.2d 786, 791 (2011) ("[T]he paramount consideration must be the best interests of the child. It is the 'public policy of this State to assure that the best interest of children is the court's primary concern in allocating custodial and decision-making responsibilities between parents who do not live together.' *Id.* at § 48–9–101(b)."); *Skidmore v. Rogers*, 229 W. Va. 13, 19, 725 S.E.2d 182, 188 (2011)(recognizing that "the Legislature set forth several overarching goals for courts to follow in determining custody arrangements[]" by enacting West Virginia Code § 48-9-102).

association the child's best interests must remain the polar star and the grandmother could not prevail.

For the foregoing reasons, I concur with the result reached by the majority insofar as it disallows visitation with the grandparent in this case. I dissent, however, from reasoning used by the majority in reaching its result.