STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

AMIE W.,
**Petitioner Below, Petitioner,**

**FILED**
**November 6, 2014**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 13-0739** (Mineral County 10-D-132)

SCOTT T.,
**Respondent Below, Respondent**

### MEMORANDUM DECISION

Petitioner Amie W. ("mother"),[1] through her counsel, Sherman L. Lambert, Sr., appeals the order entered in the Circuit Court of Mineral County on June 24, 2013, that affirmed a family court order entered May 9, 2013, which designated the home of the respondent, Scott T. ("father"), as the primary residence for the parties' children and modified the parties' parenting plan. The father appears through his counsel, Lawrence E. Sherman Jr.  The parties' children appear through their guardian *ad litem*, Kelley A. Kuhn.  On appeal, the mother argues that the family court erred by altering her parenting time with her children.  The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented. Upon consideration of the standard of review, the briefs, the record presented and the arguments of counsel, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties are the parents of two children:  L.T., who is now nine years of age, and B.T., who is now seven years of age.  The parties were divorced by order of the Family Court of Mineral County entered on August 15, 2011.  At the time of the entry of the final order both parents lived in Mineral County.  The parties entered into an agreed parenting plan which provided for shared parenting, with the mother's home being designated as the primary residence of the children. As per the plan, the children resided in their father's home for eight overnights per month, and the children attended Mineral County schools.  This parenting plan required coordination of the parents' fluctuating work schedules.[2]

---

[1]  "We follow our past practice in juvenile and domestic relations cases which involve sensitive facts and do not utilize the last names of the parties." *State ex rel. West Virginia Dep't of Human Servs.v.. Cheryl M.*, 177 W. Va. 688, 689 n.1, 356 S.E.2d 181, 182 n.1 (1987) (citations omitted).

[2]  The mother, a nurse, worked an extended weekend shift (commonly referred to as Baylor shift) with most weekdays free.  The father, a pharmacist, worked varying shifts, including weekends.

In late 2011, the mother moved the children from Mineral County to Cumberland, Maryland, where her boyfriend lived, and enrolled the children in the Allegany County school system.[3] The father averred that he did not realize that his children had left Mineral County schools until he went to a parent-teacher conference in January of 2012 and was told of this by the principal. The father hired a private investigator to find the location of the children. The mother did not file a notice of relocation pursuant to W. Va. Code § 48-9-403 (2001).[4] In a petition for contempt and modification of the final divorce order filed by the father in December of 2012,[5] the father alleged that the relocation was not in the children's best interests. Furthermore, he alleged that the mother's renunciation of the family's previously practiced religion was adversely affecting the children because the mother and her boyfriend no longer recognize traditionally celebrated holidays within the family, including Thanksgiving, Christmas, Easter and the children's birthdays.[6] He also argued that the home in which the mother resided was not in a safe neighborhood and was in a state of disrepair.

The family court appointed a guardian *ad litem* for the children. This guardian *ad litem* had previously been appointed during the parents' underlying divorce proceeding and was familiar with the parties and the children. The guardian *ad litem's* report and recommendation to the family court also emphasized the poor condition of the mother's home in Maryland. The guardian *ad litem* went to the mother's home and found that the general condition of the houses in the neighborhood was dilapidated. The home in which the children resided appeared to be leaning or crooked on the foundation. While the inside of the house was in better shape than the outside, the interior was "in need of much maintenance and repair." The guardian *ad litem* also expressed concern about the stability of the mother's housing situation. The guardian *ad litem*

---

[3] While the family court does not specifically make a finding about the distance between the mother's home in Maryland and the father's home, the guardian *ad litem* testified that it would take twenty-five minutes to get from one home to the other.

[4] W. Va. Code § 48-9-403 states that "[t]he relocation of a parent constitutes a substantial change in the circumstances under subsection 9-401(a) [ § 48-0-401] of the child only when it significantly impairs either parent's ability to exercise responsibilities that the parent has been exercising." W. Va. Code § 48-9-403(b) states that the relocation of a parent requires the relocating parent to give at least sixty days' advance notice to the other parent. Among other things, this notice must include the relocation date, the address of the new residence, the specific purpose of the proposed location and a proposal for how custodial responsibility will be modified.

[5] The Court notes that the filing of this petition for modification and contempt was based upon the relocation of the children almost a year earlier. There was no explanation for the timing of the petition.

[6] The father made additional allegations regarding the mother's boyfriend's fitness as a parent and the mother's purported interference with the father's custodial time, none of which formed the basis of the family court's findings or order.

2

stated that "[Amie W.] has placed herself and the children in a position where they are dependent on [the mother's boyfriend] for a place to live. This is a cause for concern as to the stability of the situation." The guardian *ad litem* concluded that the home of the mother and the neighborhood were not comparable to that to which the children had become accustomed.[7]

In addition to the concerns expressed in the guardian *ad litem's* report, testimony was taken at a hearing in the family court regarding the children's emotional difficulties with their mother's changing religions observations. During the hearing in family court, the mother testified that she did not follow any organized religion but strictly adhered to Biblical holidays and teachings. The mother agreed that she did not celebrate Thanksgiving, Christmas, Easter or the children's birthdays, although she was not opposed to the children celebrating these holidays with their father or other persons. The father testified that the children were confused by the change in their mother's view of religion and the celebration of holidays. The guardian *ad litem* testified that the children were adversely affected by the mother's change in regard to holiday celebrations and did not understand why this change had been made. During the hearing, the guardian *ad litem* was repeatedly asked if her recommendations were in the children's best interests, to which she responded in the affirmative.[8]

The family court found that there had been a substantial change in circumstances since the last court hearing based upon the testimony of the parties and the report and testimony of the guardian *ad litem*. The court found that the children were confused by the mother's religious beliefs, including her failure to celebrate holidays and birthdays. The court ordered that the primary residence of the children should be returned to West Virginia and be in the father's home, and that the children should be educated in Mineral County, not Allegany County.[9] The court order found that the mother and father should share in an equal manner custodial responsibility and decision-making for the children, and that the parents had agreed on a schedule wherein the children would spend equal time in each parent's home. The family court awarded equal allocation of custodial responsibility to each parent, ordering an alternating schedule where the children would be with one parent for four days, with the other parent having the children for the remaining three days. The following week, the scheduled would be reversed for each parent. On the basis of the findings and conclusions, the family court modified the parenting plan, awarding the majority of holidays and the children's birthdays to the father based upon the mother's professed lack of celebration of the same.

---

[7] While it is difficult to glean from the limited record on appeal, references were made at oral argument about the dangerous nature of the mother's neighborhood.

[8] The petitioner assigned as error the fact that nowhere in the family court order is the phrase "best interests of the children" mentioned. The judge specifically asked the guardian *ad litem* whether her recommendations were in the best interests of the children. The guardian *ad litem* responded affirmatively to this question.

[9] The children appear to have done well in the Allegany County school system.

The mother appealed the family court's ruling to the Circuit Court of Mineral County, arguing that the family court used the petitioner's religion as a factor in its decision; made the rulings based on the guardian *ad litem's* recommendation, not in the best interests of the children; and changed the school district based upon the guardian *ad litem's* recommendation, not in the children's best interests.

By order entered June 24, 2013, the circuit court affirmed the family court's decision, concluding that the family court did not abuse its discretion in ordering shared custodial responsibility and decision-making and in returning the children's primary residence, including their schooling, to Mineral County, West Virginia. The circuit court found that there was sufficient evidence to justify the modification of the parties' parenting plan, including the mother's relocation to another state and another school system without notice to the father, relocation to a home with a standard of living lower to that which the children had become accustomed, and the mother's adoption of religious practices different from those to which the children were accustomed, without any input from the father. With respect to the effect of the difference in religious views between the mother and the children, the circuit court found that the family court "was appropriately concerned with the impact the [mother's] 'new' religious beliefs was having upon her children," and that the family court properly took into account the oldest child's confusion at no longer being allowed to celebrate Christian holidays or birthdays in the manner to which she was accustomed. The circuit court specifically found that "[u]sing this issue as a factor in determining a change of custody . . . does not violate any right the [mother] has to practice her new religion," but merely represents the vast difference between it and "everything that the children have been raised with." The circuit court further found it was not in the best interests of the children to have their beliefs challenged in this manner by the mother. The mother seeks this Court's review of the circuit court's June 24, 2013, order.

The manner in which this Court reviews a circuit court order regarding a family court order is well-established as follows:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004).

The mother asserts two assignments of error in this appeal. The first is that the family court erred by changing the primary residence of the children from the home of the mother to the home of the father based upon the recommendation of the guardian *ad litem*. She asserts that the change in the children's primary residence was not in the best interest of the children. Her second assignment of error is that the lower courts' rulings favored one religious practice over another, in violation of the mother's constitutional rights.

4

In her brief to this Court, the mother contends that the guardian *ad litem* did not properly investigate this case. Specifically, the mother claims that the guardian *ad litem* did not explain how she arrived at her recommendations to the court, did not address the objectives contained in W. Va. Code § 48-9-102 (2001) and generally did not perform a sufficient investigation pursuant to W. Va. Code § 48-9-301 (2001).

At the hearing on the father's petition for modification of the parenting plan, the guardian *ad litem* testified extensively regarding her investigation and recommendation. The hearing on this matter was continued to allow the guardian *ad litem* to finish her task. The guardian *ad litem* prepared a written recommendation to the family court detailing her investigation, her recommendations, and her reasons for these recommendations prior to the hearing. The mother and father were permitted to cross-examine the guardian *ad litem*.

While the mother complains before this Court of the inadequacies of the guardian *ad litem's* work, we observe that she did not voice these objections to the family court. Therefore, we find that the mother failed to preserve her complaints about the adequacy of the guardian *ad litem's* report and investigation for this appeal. "This Court will not consider an error which is not preserved in the record nor apparent on the face of the record." Syl. pt. 6, *State v. Byers*, 159 W. Va. 596, 224 S.E.2d 726 (1976). In addition,

> To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect. The rule in West Virginia is that parties must speak clearly in the circuit court on pain that, if they forget their lines, they will likely be bound forever to hold their peace . . . it must be emphasized that the contours for appeal are shaped at the circuit court level by setting forth with particularity and at the appropriate time the legal ground upon which the parties intend to rely.

*State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 216, 470 S.E.2d 162, 170 (1996).

The mother also argues that the family court abused its discretion by taking the recommendations of the guardian *ad litem* without considering the best interests of the children. It is axiomatic that decisions regarding a child's custody should benefit the child. "In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided." Syl. pt. 1, *State ex rel. Cash v. Lively*, 155 W. Va. 801, 187 S.E.2d 601 (1972). We have further held that "[i]n visitation as well as custody matters, we have traditionally held paramount the best interests of the child." Syl. pt. 5, *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996). Likewise, in terms of modifying a parenting plan, we have held

> West Virginia Code § 48–9–401(a) (2009) permits a court to modify a parenting plan order on the basis of a substantial change in circumstances that arises after the parenting plan order is entered

> if such change was not provided for in the parenting plan and modification is necessary to serve the best interests of the child.

Syl. pt. 3, *Skidmore v. Rogers*, 229 W. Va. 13, 725 S.E.2d 182 (2011). As we noted in *Tevya W. v. Elizs Trad V.*, 227 W. Va. 618, 624, 712 S.E.2d 786, 792 (2011), the provisions of West Virginia Code §§ 48-9-101 to -604 (2001) also enumerate guidelines for custody decisions, and it is "the public policy of this State to assure that the best interest of children is the court's primary concern in allocating custodial and decision-making responsibilities between parents who do not live together." *Id*. at § 48-9-101(b). The statute provides that the best interests of the child are to be served by facilitating the following: (1) stability of the child; (2) parental planning and agreement about the child's custodial arrangements and upbringing; (3) continuity of existing parent-child attachments; (4) meaningful contact between a child and each parent; (5) caretaking relationships by adults who love the child, know how to provide for the child's needs, and who place a high priority on doing so; (6) security from exposure to physical or emotional harm; and (7) expeditious, predictable decision-making and avoidance of prolonged uncertainty respecting arrangements for the child's care and control. *Id* at § 48-9-102.

While the family court order does not specifically include the phrase "best interests of the children," the family court judge did specifically ask the guardian *ad litem* if her recommendations were based upon the best interests of the children. The guardian *ad litem* answered affirmatively. Therefore we find that the family court *did* consider the best interests of the child, appropriately using those principles enumerated by statute and through our expansive body of case law on the subject.

The mother also asserts that the lower courts infringed upon her religious freedom by removing the children from her primary residence. This Court has previously addressed a restraint on religious practices in a custody proceeding. In the case of *Bond v. Bond*, 144 W. Va. 478, 109 S.E.2d 16 (1959), the mother to whom custody was awarded began holding regular meetings of fellow Jehovah's Witnesses in the former marital home that was still jointly held by the parties. The father sought to enjoin the mother from holding these meetings and requested that the court restrict her usage of the former marital home for residential purposes only. The issue of religious freedom was properly preserved, and there was testimony that the children, who were compelled to participate in these meetings, were uncomfortable with the mother's religious practice. The court enjoined the mother from having meetings of the Jehovah's Witnesses in her home.

On appeal, this Court reversed the lower court's order that enjoined the mother from having church meetings in her home. This Court held:

> Where, in a divorce suit, a decree grants a divorce to the wife, who is a Jehovah's Witness; awards to her the custody of minor children born to the marriage union; gives to her the right to occupy the dwelling owned jointly by the parties and to use the contents thereof as a home for the divorced wife and minor children; and requires the husband to pay stipulated monthly sums for their support and maintenance; in a subsequent proceeding to

6

modify such divorce decree a decretal provision "that she [the divorced wife] is hereby enjoined, restrained and prohibited from holding, or permitting others to hold meetings of Jehovah's Witnesses in the home" is void and unenforceable because it places an unconstitutional restraint upon the wife in the exercise of religious freedom as guaranteed to her by Article III, Section 15 of the Constitution of West Virginia.

Syl. pt. 2, *id*.

We find that the instant case is distinguishable from *Bond*. In *Bond*, the mother was specifically enjoined from practicing her religion in the jointly-held former marital home by the court. In the case *sub judice*, the lower courts were careful to place no restriction on the mother's religious practices. Here, there is no restriction whatsoever on the mother's practice of her religion. The mother remains free to practice her faith and to worship in any manner without interference by the courts. The situation the lower courts were addressing was the direct effect of the mother's actions on her children. We find that this, among the other factors considered by the lower courts, is a permissible factor to be considered and does not run afoul of the admonitions and holdings in *Bond*. Thus, we conclude that the family court did not abuse its discretion in the manner alleged by the mother. The mother's personal exercise of her religion is not limited or constrained by the family court ordering shared custodial responsibility and decision-making. The circuit court did not err by upholding the family court's order.

We likewise find that the family court and circuit court did not abuse their discretion in modifying the primary residence of the children based upon the best interests of the children. The factors set forth in the guardian *ad litem's* report amply support the conclusion that the children's best interests are served by maintaining their schooling in Mineral County, West Virginia, and having their primary residence with their father. As found by the guardian *ad litem*, family court and circuit court, the many changes occasioned by the mother's relocation to her boyfriend's residence in Maryland[10] were destabilizing to them, were very confusing to the children and caused them difficulty. The lower courts applied the statutory factors and case law regarding the children's best interests in finding that a modification of the children's primary residence was warranted. We see no abuse of the lower court's discretion by using the imposition of their mother's change of religion upon the children as a consideration, among the many other factors, considered for the change of primary residence for the children. We find that the best interests of the children are served by this change. Finally, we agree that the award of holidays and the children's birthdays to the father, who routinely celebrates these holidays, is not an abuse of discretion on the part of the family or circuit courts.

---

[10]    We observe the mother failed to provide the notice of relocation required by W. Va. Code § 48-9-403 in taking the children to Maryland.

7

We find no error in the family court's well-reasoned order and affirm the circuit court's order of June 24, 2013, that likewise found no error with that order.

Affirmed.

**ISSUED:** November 6, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Margaret L. Workman
Justice Allen H. Loughry II

8